Lessie U. GANS, Executrix of the Estate of James L. Gans, Deceased, Appellant,

v.

BALTIMORE & OHIO RAILROAD COMPANY.

No. 14176.

United States Court of Appeals Third Circuit.

Argued May 10, 1963.

Decided July 12, 1963.

Daniel B. Winters, Pittsburgh, Pa. (Stein & Winters, Pittsburgh, Pa., on the brief), for appellant.

E. V. Buckley, Pittsburgh, Pa. (Mercer & Buckley, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN and FORMAN, Circuit Judges, and COOLAHAN, District Judge.

McLAUGHLIN, Circuit Judge.

There was a jury verdict in favor of the defendant railroad in this Federal Employers' Act case. The problem confronting us is whether, as a matter of law, the trial judge should have eliminated the question of the contributory negligence of plaintiff's deceased from the jury's consideration.

James L. Gans, the deceased, was a brakeman who started his employment with defendant in 1941. On November 26, 1959, around 9:00 P.M., he was a member of a freight train five man crew that was making up a train of two diesel units and fifty cars in the Connellsville, Pennsylvania yards of the railroad. It was a rainy, dark night. Gans' particular assignment was to pass along lantern hand signals. While the train was moving east, Uhazie, the engineer, turned

his head to look at some switches. Turning back to where Gans had been, the latter's lantern, which is all that had been visible, had disappeared. The train was then moving at about four miles an hour. Uhazie therefore stopped the train. Shortly thereafter there was a forward signal from the area of the tenth or twelfth car. The senior engineer, Helms, who had taken over the engineer's duties, thinking the signal was from Gans, put the train in motion for the purpose of delivering nineteen cars of the train onto track No. 7, for a westerly movement. After that task was completed, it was discovered that Gans was missing. As the train back tracked, Gans' badly mutilated body was discovered between the tracks.

There was evidence that Gans was hard of hearing, evidence also that the crew members, one or more of whom had worked with him for three or four years, did not know this. The testimony indicated that Gans' body had been dragged eastward about thirty feet.

The complaint charged that the decedent was killed as a result of defendant's negligence. The second defense of the answer specifically pleaded " * * * that the said James L. Gans was guilty of contributory negligence in failing to look out for his own safety." The pretrial stipulation, signed by the attorneys for the parties, stipulated Gans' employment on the date of his death; that his body with traumatic injuries was found on the defendant's tracks; that Gans had been working on a switching train of defendant prior to the finding of the body. The next paragraph of the stipulation reads:

"*All other matters concerning the alleged accident* such as alleged negligence of the defendant and *alleged contributory negligence of plaintiff's decedent,* and the amount of damages, if any, to which plaintiff would be entitled *are in dispute.*" (Emphasis supplied).

As set out in her brief plaintiff's theories of the cause of Gans' death were that the railroad was negligent in assigning him to the roof of a box-car at night during a rain; that the crew did not keep careful lookout when Gans fell; that the crew did not act fast enough once Gans was found missing; that they mistook another person for Gans and began moving again; that they did not call signals to make sure Gans was still about. At the trial, what seems to have been asserted as the defendant's failure to take into consideration the hearing condition of Mr. Gans with reference to the starting up of the train was at least also stressed for the plaintiff. There was no objection to the charge of the court with reference to plaintiff's affirmative case.

The defense moved for a direction of verdict at the conclusion of plaintiff's proof. The court, in denying the motion, said regarding that proof " * * * it is very thin. But regardless of how thin it is, I think it is for the jury."

The defense summation did not orally argue the question of Gans' contributory negligence to the jury. The court in discussion with counsel prior to the charge said: "Assume that he went between the cars when the train stopped. Wouldn't that be contributory negligence?" Then with reference to Gans, "[There is] * * * no indication that he did anything. * * * It is a circumstantial evidence case. There are lots of possibilities. * * * I think contributory negligence is in it. I am surprised you didn't argue it. * * * I am going to leave it in."

At that stage the defense requested the court to charge on contributory negligence. The court said:

"If I am going to allow the jury to find negligence, I think I should allow them to infer contributory negligence or infer that the plaintiff was the sole cause of his own death."

There was no objection to this at that time on behalf of the plaintiff.

The judge gave a sound, comprehensive charge. His presentation of the principles of negligence as to the defendant, sole negligence and contributory negli-

gence with relation to plaintiff's decedent, the defense responsibility of affirmatively establishing the latter, the relationship of a finding of contributory negligence on the part of Gans with the amount of a verdict in favor of plaintiff, etc., was faultless. After the charge plaintiff objected to the court having said anything at all about contributory negligence on the part of Gans. That point was argued on the plaintiff's motion for a new trial. The court stated in its opinion denying the motion:

> "There was no direct evidence as to how, why, or precisely when the accident occurred. At the trial I was of the opinion that there was sufficient circumstantial evidence to permit the jury to infer that negligence of the crew in whole or in part caused the accident, or, from the same circumstances, to infer that negligence of Gans in whole or in part resulted in his death. Cf. Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944); Schultz v. Pennsylvania R. Co., 350 U.S. 523 (1956); Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Upon review of the transcript it seems that the circumstantial evidence, if sufficient to permit a finding of negligence on the part of the crew, was equally sufficient, after taking into consideration the presumption of due care,[1] to permit a finding of negligence on the part of Gans, or a finding that there was no negligence on the part of either the crew or Gans. Evidently the jury concluded that the crew was not negligent, or that Gans was solely responsible, or that it was an unavoidable accident."

This action was fully and fairly tried by the district judge. Under Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1956) and like decisions there was sufficient circumstantial evidence of defendant's

negligence to warrant the submission of plaintiff's claim to the jury. From that same evidence there were permissible inferences of contributory negligence or prime negligence on the part of Gans; also of no negligence on the part of either the railroad or Gans.

The evidence of the crew was very clear that a brakeman riding the tops of the box-cars was acting in accordance with ordinary railroad practice. Uhazie, a witness on behalf of the plaintiff said, "It is a common thing, because sometimes that would be the only way you could see the other man. Tracks could be blocked. He would have to ride up there in order to see the signals. Q. Is that true in winter and summer, good weather and bad? A. Yes." Helms, the other engineer, said that it was not unusual that an engineer see a man on a car with a lantern and look back a minute or two later and not see him. He also said:

> "A. It is not unusual for a brakeman to get off of a car at any time, when he deems it necessary to place himself in another position, where he may be in view to see a signal from another member of the crew. Or he could possibly drop off of one car, with a hand-brake maybe on it, which is against the rule to move it with the hand-brakes on, he could possibly drop off one car and get on the next car or so, in order to release that brake. So it is not an uncommon thing for a brakeman to get off of one car and onto another. It is a commom practice, done daily.

> "Q. I see. Would it call for a situation where either the engineer or the fireman would be called upon to get off the train and start looking around or paging or calling for Mr. Gans? A. No, sir."

Kocis of the crew stated that "It doesn't matter what kind of weather" as far as riding the top of a car is concerned. He noted that a brakeman dis-

---

[1] "The jury was instructed to consider the presumption of due care in determining whether or not Gans was guilty of negligence. (T., p. 393)."

appearing from view and reappearing somewhere else in two or three minutes was an "Everyday occurrence".

It is apparent that, with just as much reason as finding the railroad proximately to blame under the scant known circumstances, the jury could have found, as it did, either that neither side was at fault or that the unfortunate happening involved was due to carelessness by Gans. In the present state of the Federal Employers' Liability Act decisional law, the district judge was duty bound to let the jury pass upon the validity of the Gans' cause of action. In the state of the whole record, he was also required to submit the question of decedent's contributory negligence for jury decision.

The judgment of the district court will be affirmed.