**Robert L. DIXON, Plaintiff-Appellant,**

v.

**PENN CENTRAL COMPANY,
Defendant-Appellee.**

**No. 72-1554.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 7, 1972.

Decided July 27, 1973.

Milford J. Meyer, Philadelphia, Pa., for plaintiff-appellant; Austin T. Klein,

Cleveland, Ohio, Joseph Smukler, Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., on brief.

Thomas R. Skulina, Cleveland, Ohio, for plaintiff-appellee; John F. Dolan, Cleveland, Ohio, of counsel.

Before WEICK, McCREE, and MILLER, Circuit Judges.

McCREE, Circuit Judge.

We consider an appeal in an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. (1970), to recover damages for injuries. The jury returned a verdict in the amount of $80,000 but, in response to special interrogatories, found the plaintiff 50% contributorily negligent. The court thereupon reduced the award to $40,000. Plaintiff appeals from denial of his post-trial motions for judgment n. o. v. or for amendment of the judgment, and contends that there was no evidence from which the jury could have properly found contributory negligence. We agree that the jury should not have been allowed to consider the issue of contributory negligence, and we reverse and remand the case for entry of the full verdict of $80,000.

Dixon was employed as a block operator by defendant, and his duties included operating chest-high mechanical levers located in a control tower. The levers threw track switches controlling the movement of trains through cross-overs and onto sidings. There was a history of trouble with one of the switches controlled by a lever in plaintiff's tower, but the evidence indicated it had not been overhauled or replaced despite defendant's knowledge of its condition. The switch malfunctioned on the day of the accident and Dixon, who was not responsible for such repair work, called for and received assistance from a signal maintainer and signal foreman. While they worked at trackside on the switch, plaintiff remained approximately 100 feet away in the tower. He had agreed to operate the lever in response to hand signals from the repairmen.

No one was with Dixon in the tower, and his testimony is the only direct evidence how the injury occurred. At first he jiggled the lever to help the repairmen locate the problem. He testified that after the switch had been worked on for some time, the repairmen gave him a signal to throw the lever.[1] When he made the attempt, the lever went in about halfway and then stopped. Dixon testified this partial success encouraged him to think he might be able to finish throwing it. When he pushed again, the lever moved approximately six more inches and then bounced back. The jury found that this occurrence caused plaintiff's injury. Dixon underwent multiple hospitalizations for a herniated intervertebral disc, its removal, a spinal fusion, and other treatment, but did not derive sufficient benefit to feel able to resume his employment.

The repairmen testified that there was nothing in the lever's mechanism which could make it bounce back and contradicted Dixon on several other points. For example, there was conflicting evidence about the number of times Dixon threw the lever and the manner in which he reported the accident. Defendant's medical expert testified that a back injury of the sort claimed by Dixon was a possible but improbable result of pushing on a chest-high lever. It was the physician's opinion that plaintiff had not suffered a herniated disc and that his complaints stemmed not so much from physical causes as from mental factors unrelated to the claimed accident.

---

1. There was apparently nothing to distinguish a signal to jiggle the lever from a signal to throw it. Dixon testified there was an "unspoken agreement" that the signal could mean either thing, and that if the lever appeared to respond when force was applied, an attempt to throw it completely would be made. The testimony of the repairmen was not inconsistent with Dixon's interpretation. In any case, the repairs eventually progressed to a point where the repairmen wanted Dixon to try to throw the lever instead of merely jiggling it.

These conflicts in evidence, which bore primarily on whether the accident had occurred and the extent of Dixon's injuries, were resolved in his favor by the jury. Its findings concerning defendant's negligence and the total amount of injury are not at issue here. At issue is whether there was any evidence of contributory negligence on the part of Dixon. If so, the District Court's decision to send the issue to the jury was a proper one. Ganotis v. New York Central R. Co., 342 F.2d 767 (6th Cir. 1965), established that the same causation standard—whether the act contributed in any way to the injury—applies both to defendant's negligence and plaintiff's contributory negligence. Accordingly, the FELA cases that allow plaintiffs to reach the jury on a very slim showing of negligence permit defendants to go to the jury on the issue of plaintiff's negligence with equally slim showings. However, just as an FELA plaintiff has no case if he cannot produce some showing of negligence, neither has a defendant who fails to produce any evidence at all on the issue.

Turning to a consideration of the respects in which Dixon may have negligently contributed to his own injuries, we think analysis will be aided by considering separately those events that immediately preceded his attempt to throw the lever and those that occurred during the attempt. Under the former heading is the question whether Dixon was negligent in attempting to throw the lever without ascertaining that the repairs had been successfully completed, as well as whether he negligently misread the signal. Under the latter heading is the question whether Dixon negligently balanced or positioned himself while throwing the lever, or used more force than was safe in the attempt. Defendant would add the further ground that Dixon "[n]egligently failed to effectively use ordinary care for his own safety and wellbeing [sic]," but this is a mere conclusion and gets us no closer to a resolution of the question.

Concerning the events preceding Dixon's attempt, defendant does not contend that Dixon was negligent in volunteering to assist the repairmen by trying to throw the lever. Because Dixon knew the switch was defective, he may be said to have assumed the risk that the lever would operate erratically. However, the doctrine of assumption of risk is not a defense in FELA cases, 45 U.S.C. § 54 (1970), and the Supreme Court has made it clear that "every vestige" of the doctrine has been eliminated. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58, 63 S.Ct. 444, 87 L.Ed. 610 (1943). Although the possibility exists that a plaintiff may negligently choose to assume a risk, we do not think that is the case here and defendant does not press the point. It is often difficult to decide whether a particular fact situation is classifiable solely as assumption of risk, solely as contributory negligence, or as some mixture of the two. "[T]he defenses . . . overlap, and are as intersecting circles, with a considerable area in common, where neither excludes the possibility of the other." W. Prosser, Law of Torts § 67, at 451 (3d ed. 1964). Nevertheless, it is clear that "an employee cannot be charged with contributory negligence simply because he 'assumed the risk' . . . ." Tiller, supra, 318 U.S. at 71–72, 63 S.Ct. at 453 (Frankfurter, J., concurring). Defendant argues that there was "ample evidence for the jury to believe that Mr. Dixon prematurely threw his weight into the switch lever which he knew was being repaired without first ascertaining that it was fixed." (Brief of Appellee at 9.) We think this is only another way of saying that Dixon assumed the risk.

The whole point of plaintiff's attempt to throw the lever was to ascertain if it was fixed; neither the repairmen nor Dixon could know whether the switch had been fixed without testing the lever. After the repairmen had worked on the defective part of the switch—a worn "motion plate" that would not slide

across the ties—we may assume they formed a definite opinion about the success of their efforts. Nonetheless, their opinion had to be tested and proven correct, and that is precisely the test Dixon attempted to make. He "assumed the risk" the defect might still prevent the lever from operating smoothly, but he cannot be said to have been negligent solely for this reason. *See* Tiller v. Atlantic Coast Line R. Co., *supra*. The apparent risk to Dixon in attempting to throw the lever was very slight[2] and on balance was far outweighed by the need to return the switch to serviceable condition. Defendant did not suggest that the procedure chosen by the repairmen and Dixon was not the usual one, or that any less hazardous procedure existed. If Dixon had declined to assist the repairmen, and one of them had suffered a similar injury while trying to throw the lever, it would have been ineffectual for defendant to have argued that the repairman chose an inappropriate way to test the progress of the work. It is immaterial that Dixon rather than one of the repairmen actually tried to throw the lever.

Although Dixon did not know whether the lever would operate smoothly when he first attempted to throw it, he certainly had reason to know something was amiss when he tried to finish throwing it after it had stopped halfway. However, contributory negligence here does not turn on this distinction; Dixon's state of mind is relevant to assumption of risk, but his assumption of risk is irrelevant unless it was negligent. Plaintiff testified that it was customary to attempt to finish throwing a lever once it had gone that far. Defendant did not dispute this claim or introduce evidence that a reasonable man would have done otherwise. Assuming

that a prudent man would use extra caution after the lever stopped, we find nothing in the record to suggest that such caution is inconsistent with a further attempt to throw the lever.

Did Dixon misread a signal? Defendant contends that "if he *misread* a signal or failed to make reasonably sure as to the nature of the signal and threw [the lever] while it was still in disrepair that he was not using ordinary care." (Brief of Appellee at 9, emphasis in original.) We have already disposed of the contention that anything turns solely on whether the switch was defective when Dixon threw the lever. Since defendant tacitly concedes that Dixon's attempt was made in response to a signal of some kind, our inquiry must center on the ambiguous nature of the hand signals, discussed in note 1 *supra*. It was demonstrated at trial that Dixon could have stepped out onto the platform of the control tower and yelled to the repairmen to tell him exactly what their signal meant. However, we attach no significance to the existence of alternate reasonable courses of action unless there is some showing that the course of action pursued was unreasonable. Since no attempt was made to dispute Dixon's interpretation of the hand signals, or to show that the repairmen meant for him only to jiggle the lever (on the contrary, it seems clear they did not), we conclude there is no evidence that plaintiff was negligent with respect to the signals.

The discussion so far concerns whether Dixon negligently assumed a risk or was otherwise negligent at some point before he made the attempt which the jury must have concluded caused his injuries. We turn now to the attempt itself.

Did plaintiff negligently balance or position himself while throwing the le-

---

2. Plaintiff had reported a minor neck injury suffered while operating the same lever six months before the events at issue here, although the earlier incident was caused when the lever went in suddenly rather than bounced back. While he might have been negligent had he failed to take precautions against the risk the lever might again go in suddenly, the earlier incident does not seem to furnish any warrant for charging him with knowledge that the lever posed other dangers to him.

ver, or use more force in the attempt than was safe? As we have noted, Dixon was the only direct witness, and defendant does not suggest there was anything negligent about the way he claimed to have braced himself. The only evidence that remotely bears on the issue of contributory negligence is indirect—defendant's medical expert testified that the alleged injury was unlikely to result from a chest-high throw.[3] In effect, Dixon's specific injury is claimed to be evidence that he was negligent in incurring it. The physician's testimony may be some evidence that plaintiff did not grip the lever as he said he did. However, that is different from saying it is evidence Dixon gripped the lever negligently, and in fact the only evidence of any kind concerning what constituted a proper grip was plaintiff's statement that both hands should be used, not too near the top in case they slipped.

An instructive contrast is presented by a case defendant cites, Domany v. Otis Elevator Co., 369 F.2d 604 (6th Cir. 1966). There, plaintiff fell on an escalator that stopped suddenly, and the issue of her contributory negligence turned on whether she was holding the handrail as she claimed. Defendant introduced evidence that another person standing on the escalator with plaintiff had not fallen because he was holding the handrail. Further, defendant conducted tests indicating that people who hold on to the handrail will not fall when an escalator stops. This court concluded that defendant had introduced enough evidence to reach the jury, and that the jury should have been allowed to draw the inference that plaintiff lied when she said she held the handrail. In contrast, the defendant railroad here made no showing that a proper grip on the lever would have prevented the accident.

■■ Nonetheless, defendant argues that *Domany* is authority for submitting the issue of contributory negligence to the jury whenever plaintiff's credibility is in issue, because juries are free to believe or disbelieve any witness wholly or in part. Albeit the credibility of witnesses is properly in the province of the jury, defendant's conclusion does not follow. Contributory negligence is an affirmative defense on which defendant has the burden of proof. It is true Dixon's credibility was in issue; plaintiff's credibility was also in issue in *Domany;* indeed, in the sense that a jury may always disbelieve a witness, the credibility of a plaintiff is always in issue. However, a defendant is not entitled to reach the jury on an issue on which he bears the burden of proof on nothing but the incredibility of the plaintiff's testimony. Other evidence of the matter to be proved must be adduced. Thereafter, defendant may be assisted in sustaining his burden by the jury's disbelief of plaintiff's testimony.

The contention that Dixon used more force than was safe can be disposed of quickly, since it suffers from most of the failings outlined earlier: defendant did not quarrel with the amount of force Dixon admitted using, did not introduce evidence to show how much effort was ordinarily used, and did not attempt to establish that the use of less force would have prevented the accident.

■ We have searched carefully for some evidence of contributory negligence because an appellate court should be reluctant to conclude from afar that the trial judge on the scene erred in a factual determination. Nevertheless, we find no evidence of contributory negligence here, and conclude it was error to submit that issue to the jury. Plaintiff's request for a peremptory instruction eliminating contributory negligence should have been granted. Failing that,

---

3. It may be relevant to observe that defendant's medical expert did not believe Dixon had suffered a herniated disc. Of course, this does not vitiate his medical opinion of the back stress occasioned by throwing a lever, but it does make it clear he did not have Dixon's back specifically in mind.

his post-trial motions for judgment n. o. v. or amended judgment in the full amount of $80,000 should have been granted.

Reversed and remanded for entry of judgment on the full verdict.

WEICK, Circuit Judge (dissenting).

I respectfully dissent for the reason that it is for the jury, and not an appellate court, to draw inferences from the evidence (whether controverted or uncontroverted) and to determine the issues of negligence, contributory negligence (comparative negligence), and proximate cause in an FELA case. Here, this Court has undertaken to determine, as a matter of law, that acts of contributory negligence were really acts of assumption of risk, which is not a defense, and in consequence the Court has increased the verdict and judgment for plaintiff from $40,000 to $80,000.

The defendant did not plead assumption of risk, which is an affirmative defense, and it was therefore not in the case, Rule 8(c) Fed.R.Civ.P. Although it was not in the case, the plaintiff himself injected it in the case by persuading the District Court to charge on this subject. It is submitted that this was not proper. Dilley v. Chesapeake & Ohio Ry., 327 F.2d 249 (6th Cir.), cert. denied, 379 U.S. 824, 85 S.Ct. 47, 13 L.Ed. 2d 34 (1964).

The defendant in its answer pleaded contributory negligence, as follows:

"At the time and place of the occurrence complained of, Mr. Dixon—

(a) Negligently failed to effectively position himself as he operated the switch lever.

(b) Negligently failed to effectively balance himself as he operated the switch lever.

(c) Negligently exerted more effort in operating the switch lever than is reasonably required under the circumstances then and there existing.

(d) Negligently failed to effectively use ordinary care for his own safety and wellbeing; all directly and proxi-

mately causing the occurrence of which he now complains."

Plaintiff's interrogatory 8 and defendant's answer thereto, are as follows:

"8. If defendant claims that plaintiff's alleged accident was caused or contributed to by his own negligence, state upon what facts such claim is based.

Answer. Exerting himself beyond own known capabilities using equipment he was familiar with and was well aware of its condition and operation."

Plaintiff requested the trial judge to instruct the jury that there was no evidence of contributory negligence, but the Court declined to do so, and the Court submitted to the jury the issues of negligence, contributory negligence, and proximate cause. It is not claimed that the Court erred in its instructions to the jury.

The jury returned its verdict and answered special interrogatories, as follows:

"We, the jury, find for the plaintiff and assess his damages in the sum of $80,000 less 50 percent negligence, $40,000. Signed Michael T. O'Brien, dated February 4, 1972.

"Members of the jury, is this your verdict?

"(Thereupon, the jury indicated in the affirmative.)

"The Court: I have the Answers of the jury to the Interrogatories that were submitted.

"Interrogatory No. 1. Was the defendant negligent?

"The answer to that is 'Yes'.

"Interrogatory No. 2. Did defendant's negligence cause or in any way contribute to plaintiff's injury or damage?

"The answer to that is 'Yes'.

"Interrogatory No. 3. Was plaintiff negligent in any way which caused or contributed to his own injury or damage?

"The answer is 'Yes'.

"Interrogatory No. 4. To what extent, expressed in percentage, did plaintiff's negligence contribute to his injury or damage?

"The answer is '50 percent.'

"Interrogatory No. 5. What amount do you find, without any reduction for any negligence which you may find on the part of the plaintiff, will fairly and adequately compensate the plaintiff for the injury or damage he received?

"And the answer is '$80,000.'" (App. 327–328).

What this Court is doing is setting aside not only a portion of the general verdict, but also setting aside the jury's answers to the special interrogatories finding that plaintiff was negligent, which negligence caused or contributed to cause his own injury or damage, to the extent of fifty per cent.

The record shows that the switch was in a state of disrepair. Plaintiff had knowledge of this condition because he reported it to the company. At the time of his injury he was assisting two fellow-employees who were maintenance men and who were engaged in repairing the switch. This can hardly be classified as dangerous work.

Plaintiff's function was to move the lever which operated the switch from a tower. The maintenance men were located on the ground while repairing the switch, and they could be seen and heard by plaintiff from windows in the tower or from the tower's rear platform. Plaintiff was to jiggle the lever or throw the switch when the maintenance men signaled him by hand to do either. The difference between a hand signal to jiggle the lever or to throw the switch, is not clear from the record (App. 114). Plaintiff had jiggled the lever on a number of occasions just prior to his alleged injury. He received a hand signal which he testified that to the best of his knowledge was to throw the switch. The maintenance men were still on the ground and plaintiff could easily have called out to them from the rear platform, when he was having trouble in moving the switch, to ascertain whether they had completed the repairs and wanted the switch thrown. He did not do so; instead, he jiggled the lever a few times and when it would not move farther, he pushed hard against it in order to throw the switch. Plaintiff claims that the lever then bounced back, and he felt a severe pain in his back, which resulted in a serious injury.

Since plaintiff was operating the lever in front of him, it is clear that the lever never struck him in the back. The medical evidence as to the nature and extent of his injury is conflicting.

Plaintiff testified that he called to his fellow employees to tell them about his accident and that in response to his call they came to the tower. Both of them testified that plaintiff never mentioned anything about either his accident or his injury. Plaintiff also testified that on one previous occasion he had received a slight injury to his neck while operating the lever. His fellow-employees testified that it was not possible for the switch to bounce back. Because of his previous experience with the lever, plaintiff could have braced himself when applying force to the lever.

The Act provides that the railroad shall be liable in damages for an injury to an employee "resulting wholly or in part" from the negligence of its officers, agents, or employees. 45 U.S.C. §§ 51, 52. In its general verdict the jury assessed damages for the part resulting from defendant's negligence, namely, $40,000. In answer to an interrogatory, the jury found that defendant was negligent. The defendant does not question the sufficiency of the evidence to support this finding. Section 53 of the Act abolishes contributory negligence as a defense, and substitutes comparative negligence. Section 54 abolishes assumption of risk as a defense.

The decision of the Supreme Court in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946), makes it clear that in FELA cases issues of negligence

and contributory negligence, as well as inferences to be drawn from the evidence, are for the jury and not for the Court to decide. In that case, the defendant contended and offered evidence to prove that it was physically impossible for the accident to have occurred in the manner claimed, and that the decedent was murdered. However, the Supreme Court held that the jury had the right to infer negligence from various facts in the case, and upheld recovery.

It was for the jury to say whether there is a reasonable basis in the record for concluding that plaintiff's alleged injury was caused in part by his own negligence. The inferences to be drawn from conflicting testimony are questions for the jury. An appellate court invades the jury's function when it draws contrary inferences from uncontroverted, as well as controverted, facts, or concludes that a conclusion different from that reached by the jury is more reasonable. Ellis v. Union Pac. R.R., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572 (1947); Tennant v. Peoria & P. U. Ry., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944).

We followed Lavender and Ellis in Ganotis v. New York Cent. R.R., 342 F. 2d 767, 768-769 (6th Cir. 1965), stating:

> "One of the purposes of the Federal Employers' Liability Act, as amended, was to abolish the common law defenses of assumption of risk, fellow servant rule and contributory negligence. With respect to contributory negligence it established the rule of comparison of negligence instead of barring the employee from all recovery because of contributory negligence. Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 63 S.Ct. 444, 87 L. Ed. 610. We do not believe that the Act also intended to make a distinction between proximate cause when considered in connection with the carrier's negligence and proximate cause when considered in connection with the employee's contributory negligence. If it had so intended, express words to that effect could easily have been used. We do not agree with appellant's contention and find no error in the trial judge's instructions. Gans v. Baltimore & Ohio Railroad Co., 319 F.2d 802, 804, C.A. 3rd.

> We are also of the opinion that the evidence was sufficient to take the case to the jury on the question of plaintiff's contributory negligence and to sustain its answer to the interrogatory on that issue. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Ellis v. Union Pacific R. Co., 329 U.S. 649, 652-653, 67 S.Ct. 598, 91 L. Ed. 572."

I would affirm the judgment of the District Court.