LEROY O'RYAN, Plaintiff-Appellant, v. C S X TRANSPORTATION, INC., Defendant-Appellee.

Fifth District   No. 5—91—0477

Opinion filed December 30, 1993.

LEWIS, P.J., dissenting.

Rex Carr and Michael B. Marker, both of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis, for appellant.

Richard F. Nash and Peter J. Barkofske, both of Law Offices of William A. Brasher, of St. Louis, Missouri, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Leroy O'Ryan, brought this action under the Federal Employers' Liability Act (FELA) (45 U.S.C.A. §51 *et seq.* (West 1986)) against his employer, defendant, CSX Transportation, Inc. Plaintiff now appeals from a judgment of the circuit court of St. Clair County in the amount of $291,500 entered after the jury returned a verdict for plaintiff in the amount of $583,000, reduced by 50% for plaintiff's contributory negligence. In this cause, plaintiff contends that the trial court erred in instructing the jury on contributory negligence because there was no evidence of such negligence. Plaintiff also contends the trial court erred in reading a jury instruction concerning contributory negligence after it was refused and in refusing to give plaintiff's general verdict form. We agree that the jury should not have been instructed on the issue of contributory negligence, and we reverse and remand the case for entry of judgment on the full verdict.

I

The trial was held from March 25, 1991, through April 6, 1991. Several witnesses were called to testify, and numerous exhibits were entered into evidence concerning plaintiff's injuries and damages. However, for purposes of this appeal, we need only recite the facts pertaining to liability. Plaintiff brought this FELA action for injuries to his back suffered while working as a signal maintainer for defendant. The injury occurred on June 1, 1987, when plaintiff was dispatched to an area owned by defendant to clear wires that were entangled with brush. Plaintiff was regularly sent by defendant to clear brush, as it caused a short-circuiting of wires. Plaintiff first climbed a telephone pole to clear brush from an overhead signal. Plaintiff was wearing his gaffs to assist him in climbing the pole. Gaffs are equipment designed to assist in climbing poles. They have a metal support that connects to the bottom of the worker's boot and then runs along the inside of the leg and belts around the bottom of the knee. Gaffs have spurs on the instep of the boot that assist the wearer in climbing poles. Signalmen regularly wear gaffs as part of their job and often keep them on all day to assist them if climbing a pole becomes necessary.

On the date in question, plaintiff had been clearing brush from poles and overhead wires all day. At the time of the occurrence, plaintiff had just cleared brush from overhead wires where he had been working for approximately 15 minutes. Plaintiff descended the pole and headed toward a circuit box to determine whether the wires he had just worked on were again conducting full electrical current. Plaintiff was carrying a meter and a terminal wrench in his hands. In order to reach the circuit box, plaintiff had to descend a steep embankment which was covered by thick foliage. Underneath the foliage were a number of "tie butts." Tie butts are remnants of ties removed from beneath the rails by the railroad's maintenance of way department. The ties are generally cut in three pieces for easy removal. Generally, tie butts are burned when outside city limits. Inside city limits, they are to be removed by defendant's maintenance of way department. Plaintiff had been working in this specific location approximately six months prior to the occurrence and was aware that tie butts were scattered throughout the area.

Plaintiff's supervisor, Charles Burcham, said that tie butts are scattered throughout the railroad's property and that signal maintainers like plaintiff are required to work in areas scattered with hidden tie butts as part of their job. Burcham agreed that it was not a signal maintainer's responsibility to remove the tie butts.

Plaintiff testified that when heading down the embankment, he stepped on a tie butt, which "creeled" under his foot and caused him to slide down the embankment approximately 12 to 15 feet. Plaintiff then landed in a pile of tie butts at the bottom of the embankment. He felt pain in his lower back, left leg, and the side of his left foot. Plaintiff alleged severe and permanent back injuries as a result of this fall. Because plaintiff was working alone, as his job generally required, on the date of the occurrence, he was the only witness to testify about what occurred on the date in question.

At the close of all the evidence, the parties offered various jury instructions. At issue are those instructions concerning contributory negligence. The first instruction mentioning contributory negligence was plaintiff's number 8, the "issues instruction." Plaintiff's number 8 defined the issues in the case based upon the pleadings of the parties. It provided:

> "The plaintiff claims that he was injured and sustained damage and that the defendant was negligent in one or more of the following respects:

(a) In failing to furnish the plaintiff with a reasonably safe place in which to work.

(b) In failing to provide a safe passageway for the plaintiff to walk while upon the defendant's property.

(c) In failing to keep its property clear of foreign objects as not to endanger the plaintiff.

(d) In failing to warn the plaintiff of the dangers and hazards of foreign objects left to accumulate on the property of the defendant.

(e) In failing to keep the property where plaintiff was required to perform his duties in a reasonably safe condition.

The plaintiff further claims that one or more of the foregoing was, in whole or in part, a proximate cause of his injuries.

The defendant denies that it was negligent, in whole or in part, in doing any of the things claimed by the plaintiff, and denies that any claimed act or omission on its part was, in whole or in part, a proximate cause of the claimed injuries.

The defendant also claims that the plaintiff's injuries were contributed to, in whole or in part, by a failure on the part of the plaintiff to exercise reasonable care for his own safety and that any amount due to plaintiff must be reduced by the proportion of plaintiff's own negligence.

The plaintiff denies the claims of the defendant.

The defendant further denies that the plaintiff was injured or sustained damages to the extent claimed."

Plaintiff later submitted plaintiff's number 12, based upon Illinois Pattern Jury Instructions, Civil, No. 160.01 (2d ed. 1971) (hereinafter IPI Civil 2d), which discusses the FELA. IPI Civil 2d Nos. 160.01 and 160.02 are similar, except IPI Civil 2d No. 160.02 contains references to contributory negligence, while IPI Civil 2d No. 160.01 does not. The two instructions read as follows:

"At the time of this occurrence there was in force a Federal statute which provided that whenever an employee of a railroad is injured while engaged in the course of his employment, and the injury results in whole or in part by reason of any defect or insufficiency, due to the railroad's negligence, in its right-of-way, then the railroad shall be liable in damages to the injured employee." (IPI Civil 2d No. 160.01.)

"At the time of this occurrence there was in force a Federal statute which provided that whenever an employee of a railroad is injured while engaged in the course of his employ-

ment, and the injury results in whole or in part by reason of any defect or insufficiency, due to the railroad's negligence, in its right-of-way, then the railroad shall be liable in damages to the injured employee. Contributory negligence on the part of the injured employee shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." (IPI Civil 2d No. 160.02.)

Plaintiff's attorney argued that IPI Civil 2d No. 160.01 was the applicable instruction in the instant case because no evidence of contributory negligence was in the record. After some discussion, plaintiff's attorney stated that in order to save time, he was also offering IPI Civil No. 160.02 as an alternate instruction. Plaintiff's attorney reiterated that he did not believe any evidence of contributory negligence existed in the present case. The trial court sustained defendant's objection to plaintiff's instruction number 12, IPI Civil 2d No. 160.01, and refused to give that instruction. Plaintiff's number 13, IPI Civil 2d No. 160.02, was given. After the trial court sustained defendant's objection to IPI Civil 2d No. 160.01 and instead gave IPI Civil 2d No. 160.02, plaintiff offered the appropriate other pattern jury instructions concerning contributory negligence in FELA cases, including plaintiff's number 18, IPI Civil 2d No. 160.10, and plaintiff's number 26, IPI Civil 2d No. 160.13.

The court also mistakenly read to the jury one contributory negligence instruction, defendant's number 18, IPI Civil 2d No. A10.03, which had been refused. Plaintiff's counsel pointed out the trial court's error in reading the instruction and suggested that it be taken out of the stack of instructions to be given to the jury for its perusal during deliberations. The trial court agreed with plaintiff's request, and defendant's number 18 was removed. The trial court did not inform the jury that the instruction was retracted.

Two verdict forms were submitted to the jury, a general form for returning a verdict in favor of defendant and a computational form for returning a verdict in favor of plaintiff, reduced by the percentage of fault attributed to plaintiff. The trial court refused to give the general plaintiff's form tendered by plaintiff. Ultimately, the jury found for plaintiff and assessed damages at $583,000, reduced by 50% for plaintiff's contributory negligence for a total of $291,500. The trial court entered judgment in that amount. The trial court denied plaintiff's post-trial motion for a new trial or for entry of judgment in the full amount with no reduction for contributory negligence. Plaintiff now appeals.

## II

Plaintiff contends that the trial court erred in instructing the jury on contributory negligence because there was no evidence of such negligence. Defendant responds that plaintiff's argument that contributory negligence instructions were in error should be barred because of plaintiff's actions during the instruction conference and throughout the trial. Defendant asserts plaintiff offered the first instruction concerning contributory negligence before even arguing about the applicability of contributory negligence instructions and later, after the trial court determined that contributory negligence instructions were appropriate, plaintiff failed to conditionally offer the remaining contributory negligence instructions. Defendant also points out that plaintiff never moved for a directed verdict on the issue of contributory negligence. In light of plaintiff's actions, defendant contends that plaintiff should be estopped from asserting any error in the trial court's giving contributory negligence instructions. We disagree, as we find nothing in the record requiring that plaintiff's arguments in this regard be barred.

## A

Defendant is correct that a party waives his right to complain of error which he induced the court to make or to which he consented. (*Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 543, 475 N.E.2d 817, 818.) "The rationale of this rule is obvious. It would be manifestly unfair to allow one party a second trial upon the basis of error which he injected into the proceedings." (*Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 144, 357 N.E.2d 500, 502.) However, a review of the record in the instant proceedings does not disclose that plaintiff induced or consented to the giving of contributory negligence instructions.

■ Plaintiff's number 8 did set out contributory negligence as an issue in the case. It defined the issues in the case based upon plaintiff's complaint and defendant's answer. In its answer, defendant denied the allegations in plaintiff's complaint and pleaded contributory negligence as an affirmative defense. The next time the issue of contributory negligence was mentioned was when plaintiff offered plaintiff's number 12, based upon IPI Civil 2d No. 160.01. Plaintiff explained that IPI Civil 2d No. 160.01, rather than IPI Civil 2d No. 160.02, was applicable because there was no evidence of contributory negligence in the case at bar. At that time, the following discussion occurred:

"MR. NASH [defense counsel]: \* \* \*

We object to Plaintiff's Instruction No. 12. No. 12 is IPI Instruction No. 160.01. And that instruction, according to the IPI—.

\* \* \*

The notes on the use of that instruction state, 'If contributory negligence is a factual issue, IPI 160.01, rather than this instruction, should be given.' IPI 160.01 presumes that contributory negligence is not a factual issue in this case. And we certainly don't agree with that assertion. We think the evidence is replete with contributory fault on the part of the plaintiff.

MR. CARR [plaintiff's counsel]: Well, I don't agree. I don't think there is any evidence on contributory negligence on the part of the plaintiff, and I would like Counsel to show me where it is.

MR. NASH: Well, first, —

MR. CARR: What did he do?

MR. NASH: —assuming that what he said was true, —

MR. CARR: Right.

MR. NASH: —making that assumption, then he drove his truck over to the back of that field and got out of his truck with his gaffs on, left his brush-cutter in the truck, even though he knew full well that the area was brushy since he had been working up and down that area and around that area for weeks, as we have shown. He walked with his gaffs on into the brush, climbed the pole, came back down with his gaffs on, and then said he reached for some tools and then stepped three—stepped down the hillside. There was no evidence in the record at all, and I very carefully paid attention to this, that when he walked over to the pole, that he looked at the area on which he—into which he intended to walk after he came down the pole. There is no evidence that when he went up the pole[,] that when he was coming down the pole that [sic] he looked into the area that he was going to walk to or that when he was on the ground, that [sic] he looked and checked that area to determine whether there was any kind of problem on that hillside when he was walking down it. He knew that there were tie butts in the area. And he says by his own words that it was covered by brush. And under those circumstances, the man has a duty to look, and

he didn't. He doesn't have the duty to see perhaps, but there is no testimony in this record that he, in fact, looked.

If he had looked,—[e]ven if he didn't look down that hill, at the bottom of that tree, according to him, or at the bottom of that pole, according to him, there was brush. He could have turned then, gone back to his truck, gotten his brush-cutters, because he knew he was going to have to go down this hill. He could have cut some of that brush on his way down to make sure that he had a safe passageway.

In addition to that, Judge, he has these gaffs on. Now, the hill that he was on, he had to walk down. The gaffs as have been described in evidence have metal bars under the bottom of the shoes and attach up the legs, and these metal bars could apply a slippery surface upon which a person could arguably slip on his way down the hillside.

MR. CARR: Your Honor, in order to save some time, if the Court is of a mind to allow that objection because of Counsel's recitation of various things that could be considered, that he says could be considered contributory negligence that that [*sic*] I don't, I have also offered 160.02 that he says should be given as a substitute.

*I don't agree with his argument at all. I don't think there is any contributory negligence. But if the Court is inclined to sustain his objection, I have given a—tendered an alternate instruction.*

THE COURT: Objection is sustained. No. 12 is refused. 13—I assume that is 13, is that correct?

MR. CARR: That will be 13, yes, Your Honor." (Emphasis added.)

A review of the discussion clearly shows that plaintiff did not waive the issue of whether contributory negligence was applicable in the instant case. Plaintiff's attorney objected to the giving of contributory negligence instructions, but the trial court disagreed. Plaintiff's attorney was accommodating the trial court in offering an alternative instruction when it was clear the trial court did not agree with his position. True, plaintiff's attorney did not conditionally offer the additional contributory negligence instructions but rather abided by the trial court's decision that contributory negligence instructions were proper in this case. Defendant intimates that one must vehemently argue its position throughout the instruction conference or risk waiving the issue. We disagree.

A party should make its position clear and then abide by a trial court's ruling. Here, plaintiff's attorney argued his position but soon realized that the trial court was inclined to disagree and give contributory negligence instructions. Plaintiff's attorney argued his position but deferred when the trial court made its position clear. We see no reason to impose a penalty of waiver when a lawyer properly defers to a judge's ruling. Moreover, we do not believe that plaintiff's number 8, the issues instruction, induced the trial court to allow contributory negligence instructions to go to the jury. If the trial court declined to give contributory negligence instructions, that issue would have been removed from plaintiff's number 8. Likewise, the fact that plaintiff did not conditionally give additional contributory negligence instructions does not mean that plaintiff consented to the trial court's ruling that contributory negligence was an affirmative defense under the facts of the present case. After reviewing the transcript, we find nothing to warrant plaintiff's being barred from raising the contributory negligence argument on appeal.

B

Defendant next contends that even if plaintiff's conduct during trial is not considered a bar to his arguing on appeal that the trial court erred in giving contributory negligence instructions to the jury, there is sufficient evidence of contributory negligence in the record to warrant the jury being so instructed. We disagree.

That the burden is on a defendant to prove a plaintiff is contributorily negligent is undisputed. Illinois Pattern Jury Instructions specifically state:

"A21.07 Burden of Proof on the Issue of Contributory Negligence

If you find in favor of the plaintiff and against the defendant, you must then consider defendant's claim that plaintiff was contributorily negligent.

As to that claim, the defendant has the burden of proving each of the following propositions:

First, that the plaintiff acted or failed to act in one of the ways claimed by the defendant as stated to you in these instructions and that in so acting, or failing to act, the plaintiff was negligent;

Second, that the plaintiff's negligence was a proximate cause of his injury.

If you find from your consideration of all the evidence that the defendant has proved each of these propositions, then you will reduce the plaintiff's damages in the manner stated to you in these instructions. On the other hand, if you find from your consideration of all the evidence that either of these propositions has not been proved, then you will not reduce the plaintiff's damages." Illinois Pattern Jury Instructions, Civil, No. A21.07 (2d ed. Supp. 1986) (hereinafter IPI Civil 2d No. A21.07 (Supp. 1986)).

The Notes on Use which follow this instruction explain that IPI Civil 2d No. A21.07 (Supp. 1986) must be given in a case where a defendant raises the issue of contributory negligence and "where there is *sufficient* evidence of plaintiff's contributory negligence to make a submissible issue for the jury." (Emphasis added.) (IPI Civil 2d No. A21.07, Notes on Use (Supp. 1986).) An FELA case is no different. The burden of proving contributory negligence is on the defendant. (*Wilson v. Burlington Northern, Inc.* (8th Cir. 1982), 670 F.2d 780, 782.) A defendant is entitled to a contributory negligence instruction if there is any evidence in the record to support the theory. (*Wilson*, 670 F.2d at 782.) If, however, the defendant fails to produce evidence of the plaintiff's lack of due care, it is reversible error to give the instruction. *Borough v. Duluth, Missabe & Iron Range Ry. Co.* (8th Cir. 1985), 762 F.2d 66.

While no issues were raised on the pleadings, we note that defendant did not plead with any specificity how plaintiff contributed to his own injuries. Defendant's arguments concerning the applicability of contributory negligence to the instant case have been recited in our discussion concerning whether plaintiff's actions during the instructions conference act as a bar to raising the issue of contributory negligence. Basically, defendant claims that plaintiff contributed to his injury because he knew the embankment was steep and brush-covered and that tie butts covered the entire area where he was working. Defendant claims plaintiff failed to keep a proper lookout and/or failed to use the brushcutters in his truck to cut a path to the circuit box. Defendant also claims plaintiff was contributorily negligent for failing to remove his gaffs before descending the embankment.

A review of the record in the instant case shows that the focus of this trial was on damages, not liability. There was limited testimony concerning what actually occurred on the date in question. Because plaintiff was working alone on the date of the occurrence, the only evidence of what occurred came from his testimony. Plain-

tiff acknowledged he was aware that tie butts were scattered in the area where he was working. The evidence was uncontroverted, however, that heavy foliage covered the area, hiding the tie butts. Testimony adduced at trial also disclosed that it was not plaintiff's duty to remove the tie butts, as that was a job to be performed by defendant's maintenance of way department. Plaintiff's supervisor testified that plaintiff was required to work in areas scattered with hidden tie butts as part of his job.

Plaintiff acknowledged that he was wearing gaffs when he fell, but there is no evidence that the gaffs in any way contributed to his fall. Plaintiff stepped on a hidden tie butt, which rolled out from underneath his foot, causing him to fall. There was no evidence that had plaintiff not been wearing the gaffs, the fall and his resulting injuries would not have occurred. Moreover, plaintiff testified that he and all other signal maintainers regularly wore their gaffs throughout the day to facilitate climbing a pole if necessary. Defendant offered no testimony to dispute plaintiff's contention that signal maintainers regularly and customarily wore their gaffs throughout the day or that such practice was hazardous.

There was no evidence presented that plaintiff failed to keep a proper lookout for tie butts or that he positioned himself incorrectly. Such an argument is purely speculative and conjectural. The evidence is the tie butts were concealed beneath thick foliage.

Defendant also contends that plaintiff was contributorily negligent for failing to use his brushcutters to clear a path down the embankment. However, there was no evidence presented that signal maintainers are provided brushcutters by defendant for such a purpose. Plaintiff testified brushcutters were used to cut foliage from overhead electrical wires. No testimony was presented that brushcutters were provided to blaze paths through foliage. Plaintiff's own supervisor testified as an adverse witness. He admitted that defendant's maintenance of way department is responsible for removing tie butts and that signal maintainers are required to work in areas where overgrown brush conceals tie butts. In our estimation, defendant failed to produce any evidence that plaintiff was in some way negligent. We believe plaintiff assumed the risk, rather than contributed to his injuries.

■■ ■ The doctrine of assumption of risk is not a defense in FELA cases. (45 U.S.C.A. §54 (West 1986); see *Tiller v. Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 87 L. Ed. 610, 63 S. Ct. 444.) It is often difficult to decide whether particular fact situations can be classified solely as contributory negligence or solely as as-

sumption of the risk. (See, *e.g., Dixon v. Penn Central Co.* (6th Cir. 1973), 481 F.2d 833; *Birchem v. Burlington Northern R.R. Co.* (8th Cir. 1987), 812 F.2d 1047.) A useful discussion of the subtleties between the two doctrines occurred in *Taylor v. Burlington Northern R.R. Co.* (9th Cir. 1986), 787 F.2d 1309, where the court stated:

"Although there is some overlap between assumption of risk and contributory negligence, generally the two defenses are not interchangeable. *Owens v. Union Pacific Railroad [Co.]*, 319 U.S. 715, 724, 63 S. Ct. 1271, 1276, 87 L. Ed. 1683 (1943); *see Tiller*, 318 U.S. at 58, [87 L. Ed. at 613,] 63 S. Ct. at 446. At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. *See Prosser and Keeton on the Law of Torts* §68, at 480-81 (W.P. Keeton 5th ed. 1984). Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. *See id.* §65, at 451-52. Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counterpart of assumption of risk, it does not constitute a defense. *Tiller*, 318 U.S. at 58, [87 L. Ed. at 613,] 63 S. Ct. at 446. By this reasoning, the employer's argument here must fail, for it is in essence an assumption of risk defense, not one based upon contributory negligence. The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of risk." (*Taylor*, 787 F.2d at 1316.)

Applying these standards, plaintiff's actions in the instant case would constitute assumption of the risk, not contributory negligence. We have found no evidence to indicate that plaintiff failed to use due care in walking down the embankment to reach the circuit box. Because there is no evidence of contributory negligence in this record, we conclude it was error to submit that issue to the jury. We need not address the other issues raised by plaintiff.

III

While at first glance the case at bar would seem similar to our supreme court's recent opinion in *Uhrhan v. Union Pacific R.R. Co.* (1993), 155 Ill. 2d 537, 617 N.E.2d 1182, the two cases are quite different. In both *Uhrhan* and the case at bar, the plaintiff claimed that he was injured while walking on a railroad's right of way and was caused to fall by debris on the ground. In both cases the issue of contributory negligence was submitted to the jury, and a finding of contributory negligence was returned. Finally, in both cases, the plaintiff claimed that the conduct resulting in the finding of contributory negligence actually amounted to assumption of the risk. These similarities, without more, would seem to indicate that the cases are indistinguishable. However, since contributory negligence and assumption of the risk are closely related but nevertheless distinct legal principles, *all* of the facts must be considered. Such examination shows *Uhrhan* and the instant case are distinguishable. In a case arising under FELA, defenses which were available in a common law negligence case have been modified or eliminated. The traditional common law bar to liability, contributory negligence, has been replaced by pure comparative negligence. (45 U.S.C.A. §53 (West 1986).) The defense of assumption of the risk, which also served as a total bar at common law, has been legislatively discarded (45 U.S.C.A. §54 (West 1986)), and under FELA neither affects liability nor serves to reduce damages.

In *Uhrhan*, the supreme court defined and explained the differences between assumption of the risk and contributory negligence in the context of FELA. Quoting *Taylor v. Burlington Northern R.R. Co.* (9th Cir. 1986), 787 F.2d 1309, 1316, the court stated that "assumption of risk is predicated on an 'employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties.' " (*Uhrhan*, 155 Ill. 2d at 548, 617 N.E.2d at 1187.) Contributory negligence, on the other hand, was defined as " 'a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist.' " (*Uhrhan*, 155 Ill. 2d at 538, 617 N.E.2d at 1187, quoting *Taylor*, 787 F.2d at 1316.) Thus, the distinction between the two concepts involves an inquiry into whether plaintiff willingly and with full knowledge proceeded to encounter a known danger as a part of his job, or whether he simply was careless in either the manner in which he performed his job or in failing to discover the hazard of the job, thus increasing the ex-

isting risk. Simply accepting the risks inherent in the job is assumption of the risk, not contributory negligence.

In *Uhrhan*, the following matters were found to constitute issues for the jury to consider with regard to contributory negligence:

1. An alleged rule violation by the plaintiff.

2. An alleged failure by the plaintiff to check his work area for hazards before switching operations began.

3. An alleged failure to use a lantern to look down at the ground before moving alongside the train in order to discover unknown hazards.

The supreme court determined that each of these matters at least deserved consideration by the jury on the issue of contributory negligence. None of these matters involved a voluntary, knowledgeable acceptance of a dangerous condition by the plaintiff, and thus they did not constitute assumption of the risk. Aside from the rule violation, the claimed misconduct on the part of the plaintiff was in his failure to attempt to discover dangers, not an acceptance of an already known danger.

In the case at bar, defendant characterizes plaintiff's knowledge at the time of his accident as follows:

"Plaintiff knew that the steep embankment he was going to walk on was brush covered. He knew that he had gaffs on which have a metal bar that wrap around the bottom of his boots. He knew that there were tie butts in the area. He had been in this area many times before."

In short, defendant argues that plaintiff had *full knowledge* of these dangerous conditions. Yet despite this knowledge, defendant argues, plaintiff proceeded to descend the embankment, resulting in this injury. This is just another way of saying that plaintiff accepted (*assumed*) these risks in the performance of his job. What defendant characterizes as negligence is in truth assumption of the risk.

Defendant's argument amounts to a claim that plaintiff was contributorily negligent because he assumed the risk. But an employee cannot be charged with *negligently* assuming the risk. *Tiller v. Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 72, 87 L. Ed. 610, 620, 63 S. Ct. 444, 453 (Frankfurter, J., concurring).

Whether the evidence justifies submission of an issue to the jury is a question of law. Once the issue is submitted to the jury for resolution the issue becomes a question of fact. (*Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 370 N.E.2d 826.)

We do not believe there was an issue of contributory negligence to submit to the jury.

In essence, if plaintiff knew of none of these risks and took no steps to discover them, he could be contributorily negligent; if he already knew of the risks and proceeded in the face of those known risks in the performance of his duties, because accepting those risks is part of his job, his conduct would be insulated from consideration on liability or damages. Generally, assumption of the risk involves a higher degree of culpability than negligence. This distinction is a matter of public policy reflecting the will of Congress. Prior to 1939, comparative negligence was the rule under FELA, but assumption of the risk remained as a total defense. This resulted in a blurring of the distinction between contributory negligence and assumption of the risk causing the debate over which doctrine applied to become the "subject of endless litigation" involving thousands of cases. *Tiller*, 318 U.S. at 62-64, 87 L. Ed. at 614-16, 63 S. Ct. at 449-50.

Since the test for contributory negligence as announced in *Uhrhan* involves consideration of whether plaintiff added to already existing dangers by his conduct, we conclude that contributory negligence is not at issue in this case. Plaintiff simply followed the custom of wearing his gaffs and worked in what both he and the employer knew was a hazardous environment.

Reviewing the distinctions between this case and *Uhrhan*, the initial appearance of identity of issues evaporates. In *Uhrhan*, there was a claimed rule violation that gave rise to a contributory negligence issue. There is no such claim in this case. In *Uhrhan*, there was an an alleged failure to check the work area for hazards before beginning switching operations. In this case plaintiff, according to defendant, already knew of the tie butts and weeds. In *Uhrhan*, there was an alleged failure to use a lantern in the dark. Darkness played no role in this accident.

The only arguable act that defendant points to that might constitute contributory negligence rather than assumption of the risk is the wearing of gaffs while descending the embankment. However, the evidence was undisputed that the custom of the job was to wear the gaffs as plaintiff did. There was no evidence or inference to be drawn from the evidence that this constituted contributory negligence, as there was no evidence the gaffs were related to his fall. It is elementary that instructions (in this case on contributory negligence) must be based on evidence. (*Shaheed v. Chicago Transit Au-*

*thority* (1985), 137 Ill. App. 3d 352, 360, 484 N.E.2d 542, 549.) There was no evidence to justify the instruction.

Defendant attempts to label conduct that formerly would have amounted to assumption of risk by the damage-reducing name of contributory negligence. To the contrary, applying the definitions in *Uhrhan* compels reversal on the issue of contributory negligence.

■ For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed, and the cause is remanded with directions to enter judgment on the full verdict in the amount of $583,000.

Reversed and remanded with directions.

MAAG, J., concurs.

LEWIS, P.J., dissenting:
> "The world is weary of the past,
> Oh, might it die or rest at last!"
> Shelley: Final chorus from *Hellas*.

I respectfully dissent. I thought that the United States Congress had amended the Federal Employers' Liability Act (FELA) in 1939 (53 Stat. 1404) to read that an "employee shall not be held to have assumed the risks of his employment." (45 U.S.C.A. §54 (1986).) In *Tiller v. Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 87 L. Ed. 610, 63 S. Ct. 444, the United States Supreme Court held that, as a result of the 1939 amendment, FELA "requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed." (*Tiller*, 318 U.S. at 64, 87 L. Ed. at 616, 63 S. Ct. at 449-50.) In *Uhrhan v. Union Pacific R.R. Co.* (1993), 155 Ill. 2d 537, 617 N.E.2d 1182, the supreme court of Illinois barely gave the doctrine of assumption of risk brief recognition, in what may be described as *dicta*, in brushing off plaintiff's claim that an employer should be barred from raising contributory negligence when an employee has assumed the risk. Surely the doctrine of assumption of risk should have died or come to rest. The doctrine, however, has the survival attributes not of Phoenix, the magnificent bird that rises from its ashes, but the Hydra, the multiheaded monster that comes back twice as bad every time you cut off one of its heads. One would think that *Tiller* and *Uhrhan* were large enough stones to keep the doctrine's immortal head buried, but apparently they are not. Oh Hercules, where are you in our hour of need?

Historically, the doctrine of assumption of risk was a defense available to the employer to defeat the employee's claim. (*Tiller v. Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 87 L. Ed. 610, 63 S. Ct. 444.) Now the majority wants to make "assumption of risk" available to an employee to defeat an employer's claim that the employee was contributorily negligent. There simply is no precedent for using the doctrine as a shield by an employee to prevent the trier of fact from examining the employee's acts in contributing to his own injuries.

The majority quotes from *Uhrhan* that "assumption of risk is predicated on an 'employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties.'" (*Uhrhan*, 155 Ill. 2d at 538, 617 N.E.2d at 1187, quoting *Taylor*, 787 F.2d at 1316.) To put it in more colloquial terminology, assumption of the risk is predicated on the fact that "the damn fool otta knowed that he would break his neck, if he tried such a stunt." No one accused the plaintiff in this case of being a "damn fool" until the majority opinion. In fact, plaintiff's counsel earnestly argued that there was no evidence of any contributory negligence by the plaintiff. Imagine counsel's surprise when he reads the majority opinion and discovers that his client will receive an extra $250,000 because his client was the sole cause of the accident. The majority even says, "Generally, assumption of the risk involves a higher degree of culpability than negligence." (255 Ill. App. 3d at 229.) Yet we award plaintiff for being more culpable in causing his own injury than we would have awarded him if he were less culpable. I now know how Alice felt in Wonderland.

The majority recognizes that the recent supreme court case of *Uhrhan* is a major obstacle, and so the opinion attempts to distinguish it by creating a new use for the doctrine of assumption of risk. In *Uhrhan*, the supreme court merely defined assumption of risk and contributory negligence. The court said nothing about using assumption of risk to prevent the issue of contributory negligence by the employee from being presented to the jury. The supreme court clearly set forth the rule that "[a] defendant in a FELA case is entitled to have the jury instructed on contributory negligence if there is any evidence to support the theory." (*Uhrhan*, 155 Ill. 2d at 547, 617 N.E. 2d at 1187.) Moreover, after defining contributory negligence as being "a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist," the court found that "a jury could reasonably find that plaintiff's actions did

add additional dangers to the situation." (*Uhrhan*, 155 Ill. 2d at 548, 617 N.E.2d at 1187.) The court completely ignored assumption of risk and how it was distinguishable from the facts in the case.

All we need to do, according to *Uhrhan*, is to review the evidence to see if there is any evidence that plaintiff's actions added additional dangers to the situation. If there were any acts by the plaintiff that increased the danger to himself, the employer is entitled to raise the issue of contributory negligence.

There was evidence that plaintiff was wearing gaffs that might have increased the danger to himself. Plaintiff also descended a steep embankment covered with heavy brush that maybe he should not have descended. He did not use any brushcutters to clear a path. He apparently was not sure of his footing, because he admitted to falling by stepping on a tie butt that "creeled" under his foot. A cliff climber would not rest his weight on a foothold until he was absolutely sure that there was a solid rock to hold him. If he had not fallen due to the tie butt, then there would be a question of whether defendant had been negligent at all. Thus, it was a factual question as to whether plaintiff was contributorily negligent in resting his weight on a tie butt on a steep embankment. Clearly, there was enough evidence for a jury to find, and the jury did find, that plaintiff's actions added to the dangers of the situation.

One final matter before leaving the subject—the majority quotes from Justice Frankfurter's concurring opinion in *Tiller* that "an employee cannot be charged with contributory negligence simply because he 'assumed the risk.' " (*Tiller*, 318 U.S. at 71-72, 87 L. Ed. at 620, 63 S. Ct. at 453.) However, it is only fair to complete the rest of Justice Frankfurter's quote, "the inquiry is, did his conduct depart from that of a reasonably prudent employee in his situation?" (*Tiller*, 318 U.S. at 72, 87 L. Ed. at 620, 63 S. Ct. at 453.) Further, the majority opinion in *Tiller* held that "the question of negligence on the part of the railroad and on the part of the employee should have been submitted to the jury." *Tiller*, 318 U.S. at 68, 87 L. Ed. at 618, 63 S. Ct. at 451-52.

So let us forget assumption of risk and the fine distinctions between it and contributory negligence. Assumption of risk no longer exists in FELA cases for any reason or purpose. The only questions are whether the defendant was negligent and whether there were any acts of negligence on the part of the plaintiff that contributed to the accident. There was some evidence by the plaintiff that a jury could reasonably find to be negligent; therefore, the trial judge

did not err in giving the instructions to the jury as to contributory negligence.

The majority opinion also raises an important issue of custom and assumes certain matters to be true that I do not believe can be assumed. Whether there was a custom of wearing gaffs is a factual question, and it is used to assist the trier of fact to determine the standard of care to which the party should be held. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.5, at 216 (5th ed. 1990).) "It must be emphasized that usage or practice does not in itself constitute a legal standard of conduct and that conformity with it does not necessarily constitute reasonable care or failure to conform negligence." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §406.5, at 217 (5th ed. 1990).) The old commonsense rule is that just because everyone does it, does not mean that such conduct is proper. We cannot say as a matter of law that it was customary for employees to wear gaffs, especially when the employee attempts to descend a steep hill covered with heavy foliage. We also cannot say as a matter of law that plaintiff exercised reasonable care for his own safety just because other employees wear gaffs, even while descending steep embankments. These are fact questions for the jury to determine.

Accordingly, I believe that as an appellate court we must at a minimum give "full faith and credit" to our own supreme court's rulings. We can do so in this case only by affirming the trial court.