(No. 78028.—

CHARLES WILSON, Appellee, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

*Opinion filed January 18, 1996.*

172

Thomas E. Jones and Leslie G. Offergeld, of Walker & Williams, P.C., of Belleville, for appellant.

Michael B. Marker, of Carr, Korein, Tillery, Kunin, Montroy & Glass, of East St. Louis, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff, Charles Wilson, filed a two-count complaint under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (1988)), alleging that defendant, Missouri Pacific Railroad Company, was negligent and caused the injuries he sustained in two accidents. The first accident occurred in 1989 and was the basis for count I of the complaint. Count II concerned a 1990 accident. The jury returned a verdict in favor of plaintiff on count I and in favor of defendant on count II. Plaintiff appealed the count II jury verdict and a divided appellate court granted plaintiff a new trial. (No. 5—92—0615 (unpublished order under Supreme Court Rule 23).) We allowed defendant's petition for leave to appeal (145 Ill. 2d R. 315) and the sole issue before us is whether the appellate court erred in granting plaintiff a new trial as to count II.

## BACKGROUND

Plaintiff testified at trial that in April of 1990 he was assigned to take a train of empty cars to the Gads

Hill Rock Quarry in Missouri. On April 9, the train arrived at Gads Hill and the train crew set the hand brakes on the cars. Plaintiff returned on April 10 to pick up the cars after they had been filled. Plaintiff was the conductor of the train that day and as conductor he was responsible for releasing the hand brakes on the cars before the train left Gads Hill.

To release the hand brakes, plaintiff climbed up a ladder to the top of a car while the train was moving at one to two miles an hour. After releasing a hand brake, plaintiff would climb back down a ladder, step to the ground and wait for the next car to approach before repeating the same procedure. The train was still moving as plaintiff stepped off the cars.

At the time of the accident, plaintiff was climbing down a ladder on the east side of the train. Plaintiff stated that this was the first time that he had been on the east side of the train that day. Before stepping off the train, plaintiff looked down to the ground for any boulders he might trip over. Plaintiff saw only ballast rock with water on it, as it had been raining for about 24 hours. He did not see anything which would not normally be present. Plaintiff then put his left foot to the ground without incident. As he put his right foot to the ground and let go of the ladder, he started sinking in mud. Plaintiff sank down to his chest before he reached a boulder and pulled himself out. Plaintiff claimed that he was injured as he tried to extricate himself from the mudhole. Plaintiff testified that he had never before seen anything like the mudhole at Gads Hill and that the mudhole was not distinguishable from the surrounding terrain. There were no other witnesses to the accident.

Defense counsel questioned plaintiff and a co-worker, William Knott, about company safety rules which involve the procedures to be used when an employee

gets on and off equipment. The rules require employees "[b]efore getting on or off equipment, [to] *** guard against injury by looking out for unsafe footing, obstructions or equipment moving on other tracks" and to "observe ground conditions to assure safe footing." Plaintiff stated that he had knowledge of the rules, had been trained in accordance with the rules, and had followed the rules on the day of the accident. The safety rules were admitted into evidence.

At the close of the trial, plaintiff's counsel moved for a directed verdict as to defendant's liability and as to the issue of contributory negligence. The trial court denied both motions and the trial court instructed the jury on the issue of contributory negligence. The jury was given three verdict forms: verdict form A provided for a finding solely in favor of plaintiff; verdict form B provided for a finding in favor of plaintiff, but allowed for plaintiff's damage award to be offset by plaintiff's contributory negligence; and verdict form C provided for a finding solely in favor of defendant. The jury ultimately returned verdict form C.

Before the appellate court, plaintiff claimed that the trial court erred in not granting his motion for a directed verdict and in instructing the jury on the issue of contributory negligence. A divided appellate court affirmed the trial court's refusal to grant a directed verdict as to defendant's liability, but concluded that the issue of contributory negligence should not have been submitted to the jury. The court found reversible error and granted plaintiff a new trial. In dissent, Justice Lewis stated that the jury was correctly instructed on contributory negligence.

## ANALYSIS

Before this court, defendant argues that the issue of contributory negligence was properly submitted to the jury in light of this court's decision in *Uhrhan v. Union*

*Pacific R.R. Co.* (1993), 155 Ill. 2d 537. Defendant also contends that it was the jury's responsibility to determine whether the plaintiff was contributorily negligent for failing to take additional precautions to avoid unsafe footing as he stepped down off the train. Finally, defendant asserts that the jury never even reached the issue of contributory negligence, as the jury returned a verdict solely in favor of defendant, and thus plaintiff is not entitled to a new trial.

In FELA actions, the plaintiff's contributory negligence does not act as a complete bar to recovery. (45 U.S.C. § 53 (1988).) Rather, the plaintiff's contributory negligence merely reduces the amount of damages the plaintiff is entitled to recover in apportion to the amount of the plaintiff's contributory negligence. (45 U.S.C. § 53 (1988).) A defendant is entitled to have the jury instructed on contributory negligence if there is any evidence to support the theory. (*Uhrhan*, 155 Ill. 2d at 547; see also *O'Ryan v. CSX Transportation, Inc.* (1993), 255 Ill. App. 3d 214, *vacated* (1994), 155 Ill. 2d 565 (wherein this court via a supervisory order vacated the appellate court judgment which held that the trial court erred in instructing the jury on contributory negligence).) It is the defendant's burden to provide evidence of plaintiff's negligence. *Uhrhan*, 155 Ill. 2d at 547.

In *Uhrhan*, a railroad employee was injured when he tripped over wire while relaying signals to the engineer and while walking alongside the train at night. (*Uhrhan*, 155 Ill. 2d at 539.) The employee gave unimpeached and uncontradicted testimony about how the accident occurred. The railroad had a safety rule which required workers to look out for tripping hazards and to correct or report the hazards they observed. (*Uhrhan*, 155 Ill. 2d at 539.) This court held that it was proper to instruct the jury on contributory negligence, as evidence of an employee's failure to follow a company safety rule

raised a question of fact as to contributory negligence and should be considered by the jury. (*Uhrhan*, 155 Ill. 2d at 547-48.) This court further stated that the employee's reasonableness at the time of the accident and whether the employee should have taken additional precautions to avoid the accident were issues of fact which should have been left to the jury. *Uhrhan*, 155 Ill. 2d at 547-48.

In *Uhrhan* and the instant cause the employee gave unimpeached and uncontradicted testimony about how the accident occurred. In *Uhrhan*, this court determined that the jury should consider whether a company safety rule was violated and whether the employee's actions at the time of the accident were unreasonable under the facts. Likewise, whether the instant plaintiff violated defendant's safety rule regarding the procedures to be used when stepping off equipment was a proper consideration for the jury. This consideration directly implicates the issue of plaintiff's contributory negligence.

There should also be no distinction between giving a contributory negligence instruction in cases where the issue involves the employee's reasonableness in (1) taking precautions while walking along a train track at night while relaying signals to an engineer (*Uhrhan*), (2) descending a steep embankment covered with brush while wearing gaffs (*O'Ryan*), or (3) using a ladder to step off a train after a heavy rain. It was the jury's responsibility to consider whether the plaintiff's actions added additional dangers to the situation and, thus, amounted to contributory negligence. (See *Uhrhan*, 155 Ill. 2d at 548.) Therefore, the trial court judge correctly instructed the jury on contributory negligence.

Further, we note that the jury verdict supports defendant's contention that the jury never even reached the issue of plaintiff's contributory negligence. FELA is a comparative fault system, and the issue of a plaintiff's

contributory negligence arises only after a jury has found that the defendant's negligence was the proximate cause of the plaintiff's injuries.

In the instant cause, the verdict forms given to the jury separated the question of defendant's liability from the question of plaintiff's own negligence. This is not a case where a general verdict form was used and where the jury did not have before it alternative verdicts. The jury was specifically instructed that it could not consider the question of plaintiff's own negligence until it first found in favor of plaintiff and against defendant. Since the jury returned a verdict solely in favor of defendant, the jury must have concluded that any negligence on the part of defendant was not the proximate cause of plaintiff's injuries. Thus, the jury never reached or considered the issue of plaintiff's contributory negligence.

For the foregoing reasons, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HARRISON, dissenting:

The appellate court's judgment should be affirmed. The majority correctly holds that if there is any evidence to support contributory negligence, the employer is entitled to have the jury instructed on that theory. (*Uhrhan v. Union Pacific R.R. Co.* (1993), 155 Ill. 2d 537, 547.) The law also provides, however, that if no evidence is presented from which a jury could properly find a lack of due care by the employee, it is generally fundamental error for the court to instruct the jury on contributory negligence, and the employee is entitled to a new trial. (*Wilson v. Burlington Northern, Inc.* (8th Cir. 1982), 670 F.2d 780, 782.) This is such a case.

Contrary to the majority's position, no legitimate

argument can be made that Wilson failed to comply with applicable safety rules of the railroad. The uncontradicted evidence established that he followed those rules fully and completely. At issue is the broader question of whether a jury could have found Wilson contributorily negligent on the theory that he could have seen the mudhole and averted injury if only he had been more careful. My colleagues avoid this issue because they cannot answer it.

Based upon the record before us, reasonable persons could not have drawn different conclusions from the facts or inferences drawn from those facts. No grounds were presented by which a jury could legitimately have concluded that Wilson was contributorily negligent. Under the FELA, an employee is not bound to exercise care to discover danger that resulted from the employer's negligence. (*Armstrong v. Chicago & Western Indiana R.R. Co.* (1932), 350 Ill. 426, 432.) Contributory negligence consists of a careless act or omission on the employee's part tending to add new dangers to conditions that the employer negligently created or permitted to exist. (*Gish v. CSX Transportation, Inc.* (7th Cir. 1989), 890 F.2d 989, 991.) No such conduct was present here. Under the uncontradicted and unimpeached evidence, the mudhole was undetectable to one who did not already know its location. Given that Wilson was such a person, no act or omission on his part could have added new danger to the conditions that Missouri Pacific (MoPac) already permitted to exist.

MoPac attempts to avoid this conclusion by charging that the witnesses' description of the mudhole is inherently improbable. A threshold problem with this argument is that a defendant in an FELA case cannot rely solely on the credibility of the plaintiff's testimony to establish contributory negligence. The defendant must produce independent evidence of the plaintiff's

lack of due care. (*Birchem v. Burlington Northern R.R. Co.* (8th Cir. 1987), 812 F.2d 1047, 1049 n.4.) MoPac failed to do that here. The railroad produced no evidence to support its claim that the mudhole would have been visible to members of its train crews had they only been more careful.

Even if MoPac could clear this hurdle, its argument would fail. The railroad asserts that if the muddy area was, in fact, undetectable, then Wilson would not have been able to draw a diagram of its location and size as he did, nor would Wilson's coworker have been able to identify the area's location. The record shows, however, that while Wilson did draw a diagram of where the muddy area was, he was able to do so only after he had fallen into it and been forced to search for footing so he could climb out. Similarly, while the coworker may have been able to confirm the mudhole's location, he was present at the scene of Wilson's accident, checked on Wilson when he detected trouble and had been told what had happened. Even at that it was still difficult for him to see where the mud was located. According to the coworker, it would not really have been possible for him to have noticed the muddy hole if he "didn't actually walk in that area and get in it."

Nothing in the record suggests that these witnesses could have provided the details they did prior to the experiences they had. Accordingly, the import of their testimony is not that the location of the hole was impossible to observe, as MoPac tries to characterize it, but simply that it could not be identified visually by workers who did not already know where it was. There is nothing inherently improbable in such a claim, nor does such a claim alter the conclusion that Wilson was not contributorily negligent.

MoPac next argues that Wilson could have protected himself by waiting to jump off the train at a spot that

was dry. This argument has no basis in the record and completely overlooks the reality of the situation in which Wilson was working. Climbing down into wet ballast violated no rule of the railroad, and it was unavoidable. Testimony established that the entire area was saturated from 24 hours of rain. For all we know from this record, Wilson may have had to travel all the way back to St. Louis, his point of origin, to find a place sufficiently dry to enable him to jump off the moving train without hitting an area of mud or standing water.

I note, moreover, that because of the rain, Wilson had walked through a considerable amount of water-covered ballast while working on the train. Wilson had absolutely no basis for suspecting that this muddy area was in any way different from any of the others he had negotiated without incident. Nothing in Wilson's experience that day could have alerted him to the risk, nor was there anything in his past experience at the quarry that should have put him on notice that what he was doing might not be safe. The failure to discover a danger when there is no reason to apprehend one is not contributory negligence. *Paluch v. Erie Lakawanna R.R. Co.* (3d Cir. 1968), 387 F.2d 996, 999.

An equally untenable argument raised by MoPac is that Wilson might have averted injury had he walked alongside the train on the east side of the tracks, where the mudhole was located, before beginning work. Because the muddy area was undetectable to those unaware of its location, the only difference this precaution would have yielded is that Wilson would have stepped into the hole rather than dropped down into it. Either way, he would still have had to struggle to extricate himself from the mud, and that is precisely what produced his injuries in the first place.

MoPac seeks support for its position in *Uhrhan* and its progeny, but that case is distinguishable. In *Uhrhan,*

a railroad employee injured his knee when he inadvertently tripped over some discarded wire while walking alongside a train at night during switching operations. This court held that it was not error for the circuit court to instruct the jury on the injured employee's contributory negligence because the employee knew that the railroad no longer hired workers to clear debris from alongside the tracks, and the jury could have found that the employee should have surveyed the area for himself before beginning work and could have used his lantern to check for tripping hazards before walking beside the train, a precaution he admittedly did not take.

For the reasons I have just discussed, the situation before us today is fundamentally different. Unlike the injured employee in *Uhrhan,* Wilson did keep a proper lookout. He observed applicable safety rules and checked carefully before he stepped off the train. Because the hazard was undetectable to those who did not already know its location, there was simply nothing more he could have done.

As a matter of law, it is not contributory negligence for an employee to fail to observe something that is not visible. Counsel for Wilson correctly observes that employees cannot be expected to possess X-ray vision. The circuit court should therefore have refused to submit the question of contributory negligence to the jury. (See *Borough v. Duluth, Missabe & Iron Range Ry. Co.* (8th Cir. 1985), 762 F.2d 66, 69 (trial court correctly refused to instruct on contributory negligence where there was no evidence that employee injured while stepping off train acted carelessly or stepped off improperly).) The only remaining question is whether that error entitles Wilson to a new trial.

As the majority mentions, the jury ultimately returned a verdict in favor of MoPac on count II. MoPac contends that in order to have done so, the jury must

have concluded that Wilson's injuries were not caused by any negligence for which MoPac was responsible. Accordingly, the railroad asserts, the jury never reached the issue of Wilson's contributory negligence, and any error in instructing the jury on that issue was harmless.

While MoPac cites some appellate court decisions which adhere to this view in common law tort actions, the Federal courts have rejected this line of reasoning in FELA cases such as the one before us today. Acknowledging the practical realities that accompany the use of juries, the Federal courts have noted that jurors may not understand the statutory comparative negligence scheme that applies under the FELA even when properly instructed, and when a general verdict is returned against the plaintiff, a court cannot ascertain whether the jury correctly applied the applicable law. For this reason, the Federal courts have held that where, as here, there is no evidence from which a reasonable person could find an employee contributorily negligent, submitting the issue of contributory negligence to the jury is not harmless. A new trial on all issues is required. (*Wilson*, 670 F.2d at 784-85; see *Birchem*, 812 F.2d at 1049 (reversible error to give contributory negligence instruction if defendant fails to produce evidence of the plaintiff's lack of due care).) Although not binding on this court, I consider this to be the better-reasoned view. The appellate court was therefore correct in granting Wilson a new trial on count II of his complaint. Accordingly, I dissent.

CHIEF JUSTICE BILANDIC and JUSTICE FREEMAN join in this dissent.