(No. 74166.—

DAVID J. UHRHAN, Appellee, v. UNION PACIFIC RAILROAD COMPANY, Appellant.

*Opinion filed July 22, 1993.*

HARRISON, J., took no part.

Thomas E. Jones and Leslie G. Offergeld, of Walker & Williams, P.C., of Belleville, for appellant.

Roger C. Denton, of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of Belleville, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The controversy in this case stems from the injury plaintiff, David J. Uhrhan, suffered while employed as a switchman by defendant, Union Pacific Railroad Company (Railroad). Resolution of this dispute requires this court to determine (1) whether the trial court properly allowed the defendant's expert witness to testify despite

that party's failure to comply with Supreme Court Rule 220, and (2) whether the trial court properly submitted the issue of contributory negligence to the jury.

## BACKGROUND

On December 8, 1985, plaintiff reported to work at 11:59 p.m. He and the three other members of his crew were to perform the switching of cars to make up a train. In this operation, the rear man first prepares the cars for coupling. He then walks out from between the cars and gives a signal down the line to the foreman. It was then plaintiff's job to relay signals from the foreman to the engineer, inside the engine, indicating it was safe to back up and complete the coupling.

In December of 1985, the standard method for giving signals was with the use of a lantern. The lanterns were also to be used so that the switchmen could see where they were going while walking through the yard.

At approximately 1:15 a.m., plaintiff was positioned under a street bridge. There was no light under the bridge, although there may have been yard lights near the bridge. After having relayed a signal to the engineer, plaintiff began to move toward the engine. While moving, plaintiff tripped over a piece of wire six to eight feet in length. As he fell, he struck his knee against a piece of a broken railroad tie, causing injury to that knee.

Formerly, the Railroad had hired workers to keep the area alongside the tracks free of debris. Sometime prior to December of 1985, it discontinued the practice as a cost-cutting measure. Nonetheless, the Railroad did have a safety rule requiring workers to be on the lookout for tripping hazards and to correct or report those they observed.

One year later, on December 30, 1986, plaintiff filed an action in the circuit court of St. Clair County to re-

cover damages for the injury he sustained. Plaintiff claimed that his injuries resulted from the Railroad's negligence in failing to provide him with a safe place to work. He sought recovery under the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (1988)).

## MEDICAL TESTIMONY

Following the injury, plaintiff initially came under the care of Dr. Forbes McMullin, an orthopedic surgeon. After performing a procedure to aspirate the fluid buildup in plaintiff's knee, Dr. McMullin released plaintiff to work on January 20, 1986. On February 10, 1986, plaintiff returned for treatment for a persistent prepatellar bursitis condition. Dr. McMullin recommended that the bursal sac be removed completely. He performed this operation on February 17, 1986. On March 24, 1986, Dr. McMullin again released plaintiff to work.

On April 16, 1990, plaintiff returned to see Dr. McMullin. Plaintiff stated to Dr. McMullin that he continued full-time work but experienced an occasional achiness in his knee. On examination, Dr. McMullin felt that plaintiff would have occasional pain, along with minimal crepitus due to certain degenerative changes. Dr. McMullin anticipated that plaintiff's symptoms would be controlled by aspirin or Ibuprofen and did not expect plaintiff to require any active medical care in the future.

Dr. Rosecan, an internist, testified that he had been treating plaintiff since May 7, 1986. He stated that he was currently treating plaintiff for a variety of medical conditions. With regard to plaintiff's knee, Dr. Rosecan testified that his prognosis as of the most recent office visit on January 23, 1990, was for plaintiff to have continued and recurrent pain due to degenerative joint disease. Contrary to Dr. McMullin, Dr. Rosecan believed that plaintiff would likely need medical treatment and miss work periodically in the future due to the knee.

Dr. Carter, an orthopedic surgeon and defendant's Rule 215 examining physician, testified by video evidence deposition. Dr. Carter examined plaintiff on April 25, 1990. Dr. Carter found no clinical evidence of any abnormality in plaintiff's knee. He did not believe plaintiff required current or future medical care and treatment for the knee.

## PROCEEDINGS BELOW

The trial judge set this case for trial in an atypical fashion. Rather than having pretrial conferences to set a definite trial date months in advance, Judge Starnes had monthly docket calls at which the parties would announce whether they were ready for trial. If either side was not ready, the case would be continued to the next monthly docket call. It was not until these docket calls that a definite trial date was known. At the June 6, 1990, docket call, both parties announced that they were ready for trial.

On June 11, 1990, the morning of the first day of trial, plaintiff filed a motion to bar Dr. Carter's evidence deposition. Plaintiff argued that defendant had failed to disclose Dr. Carter as an expert 60 days prior to trial as required by Supreme Court Rule 220. Plaintiff also asserted that he was prejudiced, as his counsel had taken the deposition of the treating physicians without the knowledge of Dr. Carter's opinions.

Rather than excluding Dr. Carter, the trial court stated that it would be amenable to a motion for a continuance for plaintiff to gather additional medical testimony. The court further stated that it would be inclined to assess 100% of the costs of the additional depositions against the defendant. After weighing the options, plaintiff elected to proceed with the trial.

The jury found in favor of the plaintiff and awarded him $17,000. The jury found that the Railroad was liable

for $1,000 for disability; $5,000 for past pain and suffering; $3,000 for future pain and suffering; and $8,000 for past lost earnings. The jury did not award plaintiff any recovery for future lost wages. The jury further determined that plaintiff had been 40% contributorily negligent and reduced his recovery accordingly. Thus, the trial judge entered judgment in favor of plaintiff in the amount of $10,200.

On plaintiff's appeal, the appellate court affirmed the judgment of the circuit court as to the defendant's negligence, but reversed the jury's finding of contributory negligence. The panel stated that there was no evidence warranting the submission of contributory negligence instructions to the jury. The appellate court also determined that it could not simply reinstate plaintiff's full damage award because, in its opinion, the circuit court committed reversible error in admitting the testimony of Dr. Carter. Thus, the appellate court reversed the damage award of the jury and remanded for a new trial limited to the question of damages. 230 Ill. App. 3d 725.

## ISSUES PRESENTED

On appeal to this court, the defendant argues (1) that in a case such as the one at hand, the trial court should have discretion in imposing sanctions for a party's failure to comply with the 60-day requirement set forth in Rule 220 for the disclosure of expert's opinion; and (2) that the appellate court erred in concluding that there was no evidence of contributory negligence.

## RULE 220

Supreme Court Rule 220(b)(1) requires a party to disclose the identity of an expert witness, retained to give an opinion at trial, either within 90 days after the expert's opinion first becomes known to the party or at the first pretrial conference, if the opinion is known at the

time, whichever is later. (134 Ill. 2d R. 220(b)(1).) In any event, the trial court is to enter an order scheduling the dates upon which all expert witnesses shall be disclosed. (134 Ill. 2d R. 220(b)(1).) In selecting such dates, the trial court is to "insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence." (134 Ill. 2d R. 220(b)(1).) The rule provides that the failure to disclose an expert witness within the required time frame will result in the disqualification of the expert as a witness. 134 Ill. 2d R. 220(b)(1).

We agree with the appellate court and find that defendant was in violation of Rule 220. Ultimately, the trial was set for June 11, 1990. The earliest action by defendant that could possibly constitute the required disclosure occurred when it sent a copy of Dr. Carter's report to plaintiff—sometime after the April 25, 1990, examination. As that act did not occur more than 60 days prior to trial, defendant technically failed to comply with Rule 220.

In this case, however, the violation does not require a mandatory disqualification of the expert witness. This is so because plaintiff waived his Rule 220 objection.

On February 28, 1990, 102 days before the case was eventually called for trial, the trial judge granted defendant's motion for a Rule 215 examination of the plaintiff. Dr. Carter examined the plaintiff on April 25, 1990. Within a few days after the exam, plaintiff received Dr. Carter's report of the results of the examination. On or about May 2, 1990, approximately 40 days prior to trial, defendant sent notice that he would take the evidence deposition of Dr. Carter on May 22, 1990. At the June 6, 1990, docket call, plaintiff stated that he would be ready to go to trial on June 11, 1990.

Prior to June 11, plaintiff gave no indication that he objected to the examination by Dr. Carter, the taking of Dr. Carter's evidence deposition, or the fact that Dr. Carter's disclosure was untimely. The fact that plaintiff did not raise any objection prior to trial is relevant in light of the requirements of Rule 220 and its interplay with the unique manner in which Judge Starnes set the trial date.

Rule 220(b)(1) requires in part that "[a]ll dates set by the trial court shall be chosen to insure that discovery regarding such expert witnesses will be completed not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence." In this case, however, the basic premise that the drafters of Rule 220 were working from—that the trial judge anticipates the case to go to trial on a date certain—was not present. Rather than establish a set date when trial would begin, the judge accommodated the parties by permitting them to determine their own readiness for trial on essentially a month-by-month basis.

Judge Starnes began scheduling this case for docket calls beginning in March of 1989. All told, Judge Starnes called this case on the trial docket a total of 14 times. Given these facts, it is difficult to say when Judge Starnes "reasonably anticipated" this case would actually go to trial. Because there was no date certain when the trial would commence, it would be impossible, without hindsight, for anyone to determine what would comprise the 60 days prior to trial.

Thus, when the parties stated that they were ready for trial without objections, the trial judge could reasonably believe that the discovery rules had been complied with or that compliance was waived. Had the plaintiff made his objection known, prior to the first day of the trial, the trial judge could have simply called the case

out for trial one month later, thereby satisfying the 60-day requirement of Rule 220.

Even at the late hour of the morning of trial, the trial judge continued to accommodate the parties and at the same time attempt to satisfy the language and spirit of the rule. When the plaintiff sought to bar the testimony of Dr. Carter, the trial court found that it could not in fairness grant the plaintiff's motion. Instead, Judge Starnes stated that he would be amenable to a motion for continuance for plaintiff to marshal further medical testimony. In fact, Judge Starnes stated that he would be inclined to assess 100% of the costs of the additional deposition against the defendant. In this manner, the language of the rule would have been satisfied, as the new trial date would have undoubtedly been set 60 days from the date of disclosure. Further, the spirit and purpose of the rule would have been met, as the plaintiff would not be subject to surprise. After considering the options, however, plaintiff elected to proceed with the trial.

It would appear that plaintiff felt that Dr. Carter's testimony, and therefore the Rule 220 violation, was not particularly significant at the time. Otherwise he would have either accepted the trial court's offer for a continuance in order to depose Dr. Carter, or appealed the trial court ruling. It was not until after the jury verdict that plaintiff decided the testimony was important. By electing to proceed with trial, plaintiff made a strategic decision to waive his objection under Rule 220.

We note that there is no evidence of bad faith on the part of the defendant. There is no indication that defendant intended to surprise the plaintiff with this witness. Indeed, when defendant became aware of the issue, it immediately moved for a continuance in order for the plaintiff to do whatever he felt was necessary to properly prepare for trial.

It is equally significant that plaintiff failed to renew his objection to the testimony at trial. Prior to the start of trial, the trial court gave the plaintiff an opportunity to depose the witness, which he declined. Then, at trial, plaintiff did not object when the defendant sought to submit the videotape deposition of Dr. Carter to the jury. These actions could reasonably have led the defendant and the trial judge to believe that plaintiff had abandoned his objections under Rule 220. This constitutes an independent basis for the finding that plaintiff waived his objection to the timeliness of the disclosure. See *Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017 (defendant found to have waived error when he failed to renew Rule 220 objection at trial).

Given the unique procedure by which the ultimate trial date was established, the fact that the violation could have been readily and equitably remedied, and the fact that plaintiff failed to object to the violation at trial, it was not reversible error to deny plaintiff's motion to disqualify Dr. Carter.

Further, we find no merit in plaintiff's contention that admitting Dr. Carter's testimony prejudiced plaintiff's case because he had to depose his own witnesses without knowledge of Dr. Carter's opinion. There is no showing that plaintiff could not have redeposed his witnesses during the court's offered continuance. Nor is there any showing why the plaintiff could not have simply subpoenaed the necessary witnesses to testify at trial.

## CONTRIBUTORY NEGLIGENCE

We next address the appellate court's finding that the trial court erred in giving the jury instructions on plaintiff's contributory negligence. We find that the appellate court erred and now reverse.

A defendant in a FELA case is entitled to have the jury instructed on contributory negligence if there is any evidence to support the theory. (*Gish v. CSX Transportation, Inc.* (7th Cir. 1989), 890 F.2d 989, 992.) Nonetheless, the burden is on the employer to produce evidence of plaintiff's lack of due care. (*Gish*, 890 F.2d at 992.) We find that the Railroad has satisfied that burden and agree with the trial court that the jury should have been given instructions as to plaintiff's contributory negligence.

Evidence of a violation of a company safety rule raises a question of fact as to contributory negligence. (*Wilson v. Norfolk & Western Ry. Co.* (1982), 109 Ill. App. 3d 79.) At the time of the accident, one of the rules of the railroad required the employees to be on watch for tripping hazards when they walk anywhere within the railroad yard. Whether the rule applies in the current situation should have been a jury determination.

Further, even if the safety rule did not exist, a reasonable person could be expected to take some precautions prior to moving in the dark. Or, as the defendant argues, the plaintiff could be expected to have checked his work area before the switching operation began. This is especially true as the plaintiff was aware that the Railroad no longer hired workers to clean debris from the area alongside the tracks.

The appellate court found that given the need to keep a constant eye out for the other signal lanterns, and the darkness at the time, plaintiff could not reasonably have been expected to be more vigilant. The appellate court also found that plaintiff could not be faulted for failing to check the area for hazards before commencing the switching procedure.

These determinations, however, were not the appellate court's to make. Rather, issues of plaintiff's reason-

ableness are issues of fact that should have been left for the jury.

Finally, we address plaintiff's contention that this was not a case of contributory negligence but of assumption of risk—an invalid defense in FELA actions. (45 U.S.C. §54 (1988).) We disagree.

An assumption of risk is predicated on an "employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties." (*Taylor v. Burlington Northern R.R. Co.* (9th Cir. 1986), 787 F.2d 1309, 1316.) On the other hand, contributory negligence "is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist." *Taylor*, 787 F.2d at 1316.

Here, a jury could reasonably find that plaintiff's actions did add additional dangers to the situation. The jury could have determined that plaintiff should have surveyed the area prior to the start of the switching operation. Further, the jury could have found that the reasonable person would have used the lantern to quickly glance down before moving alongside the train. The jury should have been allowed to make such a determination.

In conclusion, we find that the trial court properly instructed the jury on plaintiff's contributory negligence. We also find that plaintiff waived his right to object to the technical Rule 220 violation.

Accordingly, we reverse the appellate court decision and affirm the trial court judgment.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.