GARY PRUETT, Plaintiff-Appellee, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District   No. 5—92—0239

Opinion filed April 7, 1994.

Thompson & Mitchell, of Belleville (Thomas W. Alvey, Jr., Kurt E. Reitz, and Mary Sue Juen, of counsel), for appellant.

Stephen M. Tillery and Michael B. Marker, both of Carr, Korein, Tillery, Kunin, Montroy, Glass & Bogard, of East St. Louis, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Norfolk and Western Railway Company, appeals from a judgment in favor of plaintiff, Gary Pruett, in an action brought by plaintiff under the Federal Employers' Liability Act (FELA) (45 U.S.C.A. § 51 *et seq.* (West 1986)). Defendant contends that (1) the trial court erred in limiting defendant's cross-examination of one of plaintiff's expert witnesses; (2) the trial court erred in directing a verdict against defendant on the issue of plaintiff's contributory negligence; and (3) the trial court erred in refusing to instruct the jury on plaintiff's preexisting back condition. We affirm.

## I

This action arose from an injury plaintiff sustained in the course

of his employment for defendant. Plaintiff worked as a switchman for defendant and its predecessor from 1973 until 1988. On December 5, 1988, plaintiff was assigned to work at Luther Yard in St. Louis, Missouri. It was plaintiff's responsibility to throw a Racor 20-C switch to enable an oncoming train to change tracks. As plaintiff attempted to throw the switch, it stuck, causing severe injury to plaintiff's back.

At trial, there was testimony that defendant had received prior complaints about the Racor 20-C model switch which caused plaintiff's injury. There was also evidence that just days before plaintiff's injury another employee of defendant reported problems with the same switch plaintiff used on December 5, 1988. Plaintiff testified that he followed the prescribed technique for throwing the switch, and there was no indication of any problem until the instant the switch stuck. Both plaintiff and Fred Barton, another switchman working on the Luther Yard at the time, testified it was necessary for plaintiff to complete throwing the switch in order to avert a risk of a train derailment.

Dr. James E. Segrist was plaintiff's initial treating physician. He testified that he first saw plaintiff five days after the incident. Dr. Segrist ordered an MRI, which was taken on January 19, 1989. The MRI showed degenerative changes in the lumbar area of plaintiff's spine. Dr. Segrist testified that, in his medical opinion, the degenerative changes antedated the December 5, 1988, injury. Other medical experts, Dr. John Wagner and Dr. David Schreiber, testified that the condition at L5-S1 preexisted the December 5 injury and could have been caused by the normal aging process or a prior injury. Plaintiff testified that before the accident, he had never experienced any pain, nor had he sought treatment for this condition. Since the accident, however, plaintiff has experienced chronic back pain with associated problems in his extremities. As a result of plaintiff's injuries, he was unable to resume his career and will require ongoing therapy.

The jury returned a verdict in favor of plaintiff and awarded him $867,000 in damages.

## II

In this appeal, defendant first contends that the trial court erred in limiting its cross-examination of plaintiff's medical expert, Dr. David Schreiber, concerning his bias and financial interest in this case. Specifically, defendant argues that the court improperly precluded defense counsel from refreshing Dr. Schreiber's recollection of: (1) the names and dates of prior testimony given by him in other railroad cases; (2) the frequency with which he has examined, treated, or testified on behalf of the plaintiffs' bar since 1978; and (3) the specific amount he has charged for his deposition testimony since 1978.

On direct examination, Dr. Schreiber testified as to his hourly rate for giving depositions or in-court testimony and the total number of court appearances he has made on behalf of patients represented by plaintiff's attorney's office in the four years prior to this trial.

On cross-examination, Dr. Schreiber testified that he had also testified in two other cases for members of plaintiff's counsel's office, both of which were also against railroad defendants. Dr. Schreiber stated the fees he charged for the last two cases he appeared in, as well as his total charges for his work on the case at bar. He also testified as to the number of years he has participated in litigation as an expert witness and the average number of depositions he gives per year.

A medical expert can be questioned about fee arrangements, prior testimony for the same party, and financial interest in the outcome of the case. (Sears v. Rutishauser (1984), 102 Ill. 2d 402, 408, 466 N.E.2d 210, 212.) The court in Sears further held that a medical expert may be cross-examined concerning the number and frequency of referrals from an attorney, but such cross-examination should be "strictly limited to the number of referrals, their frequency, and the financial benefit derived from them." (Sears, 102 Ill. 2d at 411, 466 N.E.2d at 214.) The Sears court also stated that the trial judge must exercise his or her discretion to protect the doctor-patient privilege and prevent undue consumption of time. Sears, 102 Ill. 2d at 411, 466 N.E.2d at 214.

A medical expert may also be cross-examined concerning the frequency of his testimony for plaintiffs or defendants and the annual income earned from such testimony. (Trower v. Jones (1988), 121 Ill. 2d 211, 520 N.E.2d 297.) Specifically, the Trower court approved inquiry concerning income going back two years before trial. Both holdings were framed in terms of the circuit court's exercise of discretion.

In the case at bar, Dr. Schreiber testified as to his present fee arrangements, the approximate number of times per year he has been deposed since 1978, and the fact that he has testified for plaintiff's counsel's law firm on two other occasions in the 30-day period prior to this trial. Dr. Schreiber could not recall the actual number of times he has testified or been deposed in cases involving railroad defendants during the course of his career, nor was he able to recall what he charged per hour to testify in 1978. Defense counsel attempted to refresh Dr. Schreiber's recollection on the number of times he has testified against railroad defendants by reading a list of case names and asking the doctor if he recalled testifying in them. The trial court sustained plaintiff's objection to this line of question-

ing, holding that it was improper for defense counsel to recite the names of Dr. Schreiber's other patients. The trial court further stated that defense counsel could have determined the number of times Dr. Schreiber had testified in other cases during discovery by requesting or subpoenaing his records regarding his prior appearances.

■ The court clearly allowed defense counsel to inquire about Dr. Schreiber's fee arrangements, his other appearances on behalf of plaintiff's counsel's law firm, and the number of times he has testified during his career. Defendant now argues that defense counsel's cross-examination of Dr. Schreiber was improperly limited because the doctor could not recall the number of times he testified in other railroad cases, the number of times he had examined, treated, or testified on behalf of the plaintiffs' bar since 1978, or his fee schedule since 1978 for deposition testimony. We do not agree. The trial court was correct in barring defendant from going through each individual case concerning other litigants in an attempt to refresh the doctor's recollection as to how many times he testified previously. The trial court's ruling was in accordance with the principles set forth in *Sears*, specifically the court's concerns about doctor-patient privilege, and we find no error or abuse of discretion. The scope and manner of cross-examination allowed by the circuit court was in accord with *Trower* and *Sears*.

## III

Defendant next argues that the trial court erred in directing a verdict against defendant on the issue of plaintiff's contributory negligence. Defendant claims that plaintiff was contributorily negligent because: (1) evidence showed that plaintiff knew the Racor 20-C switches were difficult to throw; (2) plaintiff had complained about the difficulty a year prior to this incident; and (3) despite plaintiff's feeling of back pain when the Racor 20-C switch stuck, he continued to force the switch into place.

A defendant in an FELA case is entitled to have the jury instructed on contributory negligence if there is any evidence to support the theory. (*Uhrhan v. Union Pacific R.R. Co.* (1993), 155 Ill. 2d 537, 547, 617 N.E.2d 1182, 1187.) Nonetheless, the burden is on the employer to produce evidence of plaintiff's lack of due care. (*Uhrhan*, 155 Ill. 2d at 547, 617 N.E.2d at 1187.) Our supreme court defined contributory negligence as " 'a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist.' " (*Uhrhan*, 155 Ill. 2d at 548, 617 N.E.2d at 1187, quoting *Taylor v. Burlington Northern R.R. Co.* (9th Cir. 1986), 787 F.2d 1309, 1316.) The *Uhrhan*

court also held that the jury may consider: (1) an alleged rule violation by the plaintiff; and (2) an alleged failure by the plaintiff to check his work area for hazards before switching operations began.

■ Plaintiff's knowledge that the Racor 20-C switch had stuck on prior occasions does not constitute a careless act or omission on his part tending to add new dangers to conditions that defendant negligently created or permitted to exist. The fact that he alerted defendant to this problem certainly does not constitute negligence either. As to whether he should have forced the stuck switch into place after feeling pain in his back, the evidence showed plaintiff did not have a safe alternative. The uncontroverted testimony on this point was that it was essential for plaintiff to finish throwing the switch in order to avoid a possible train derailment. We certainly do not find that plaintiff's completion of this task, knowing the risks involved should he fail, constitutes contributory negligence. Therefore, we find no error in the trial court's order directing a verdict in favor of plaintiff on the issue of contributory negligence.

## IV

Defendant's last contention is that the trial court erred in refusing to instruct the jury regarding plaintiff's preexisting back condition. As stated earlier, three of plaintiff's medical witnesses opined that plaintiff suffered from an asymptomatic degenerative back condition prior to his injury on December 5, 1988. The jury was given Illinois Pattern Jury Instructions, Civil, No. 30.21 (3d ed. 1989) (IPI Civil 3d), which states:

> "If you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from an aggravation of a pre-existing condition or a pre-existing condition which rendered the plaintiff more susceptible to injury."

Defendant argues, however, that it was reversible error for the trial court to refuse to give three of defendant's tendered non-IPI instructions, one of which states:

> "There is evidence that plaintiff had degenerative disc disease prior to the accident complained of here and for which defendant is not liable or responsible. If you find for plaintiff, then at arriving at the amount of your verdict, you should not consider any pecuniary loss caused by the degenerative disc disease which would have resulted independently of the accident. You should not consider any medical or hospital expenses incurred by reason of the degenerative disc disease which would have occurred independently of the accident. If you should find that all damages which plaintiff claims to have sustained from and after December

5, 1988, are solely attributable to the progression of the degenerative disc disease, you must return a verdict in favor of the defendant."

(The other two instructions defendant tendered on this issue are slight variations of the above instruction.) In support of its assertion of this instruction, defendant cites *Greenfield v. Consolidated R. Corp.* (1986), 150 Ill. App. 3d 331, 500 N.E.2d 1083. In that case, the plaintiff filed suit against the defendant after plaintiff suffered a heart attack in the course of his employment. Undisputed evidence showed that at the time of the attack plaintiff had an advanced case of atherosclerosis, also known as coronary artery disease, a progressive disease which causes arteries to become blocked. There was a dispute among the plaintiff's treating physicians as to whether the plaintiff's duties at work precipitated the heart attack, and two of the plaintiff's three medical witnesses testified that in the plaintiff's physical state he could have had the attack at any time. The jury returned a general verdict for defendant, and judgment was entered thereon. On appeal, one of the plaintiff's contentions was that the trial court committed reversible error in giving the jury the following instruction:

" 'There is evidence that the plaintiff had atherosclerosis prior to his accident complained of here and for which defendant is not liable or responsible. If you find for plaintiff, then at arriving at the amount of your verdict, you should not consider any pecuniary loss caused by the atherosclerosis which would have resulted independently of the accident. You should not consider any medical or hospital expenses incurred by reasons of the atherosclerosis which would have occurred independent of the accident. If you should find that all damages which plaintiff claims to have sustained from and after September 19, 1981, are solely attributable to the progression of the atherosclerosis, you must return a verdict in favor of defendant.' " *Greenfield*, 150 Ill. App. 3d at 341, 500 N.E.2d at 1091.

This court stated that we found no reversible error in the giving of the instruction, but we did not necessarily endorse its use. We stated:

"The complained-of instruction here was given to the jury along with damage instructions. The jury found the defendant not liable, and we do not believe any error in this instruction was so pervasive or prejudicial as to create a likelihood that it may have affected the jury's decision on the issue of liability. [Citation.] Furthermore, plaintiff's theory that defendant was at last [*sic*] partially responsible for plaintiff's preexisting condition of atherosclerosis was presented to the jury in the instructions

regarding liability. The instructions, taken as a whole and in series, fully apprised the jury as to the applicable legal principles." *Greenfield*, 150 Ill. App. 3d at 341-42, 500 N.E.2d at 1091.

It is upon this language that defendant relies in arguing that it was reversible error for the trial court to refuse to give defendant's tendered instruction. We do not find this argument persuasive. *Greenfield* is clearly distinguishable from the case at bar. In that case, the jury never reached the issue of damages because they found that the defendant was not liable for the plaintiff's injuries. And although we found the instruction did not constitute reversible error, we certainly did not find it mandatory, as defendant in the present case argues. Furthermore, *Greenfield* was decided prior to the October 15, 1988, approval of IPI Civil 3d No. 30.21. After the promulgation of IPI Civil 3d No. 30.21, it became more appropriate to give it, as the trial court did in the instant case, than to give the instruction given in *Greenfield*. See *Worthy v. Norfolk & Western Ry. Co.* (1993), 249 Ill. App. 3d 1096, 619 N.E.2d 1371; *Grimming v. Alton & Southern Ry. Co.* (1990), 204 Ill. App. 3d 961, 562 N.E.2d 1086.

■ We note initially the presumption in favor of IPI instructions mandated by our supreme court. Rule 239(a) reads as follows:

"Rule 239. Instructions

(a) Use of IPI Instruction; Requirements of Other Instructions. Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law. Whenever IPI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given in that subject should be simple, brief, impartial, and free from argument." (134 Ill. 2d R. 239(a).)

(See also *Erickson v. Muskin Corp.* (1989), 180 Ill. App. 3d 117, 127, 535 N.E.2d 475, 481.) The instruction given was IPI and properly stated the law.

The circuit court was also correct in refusing defendant's tendered instructions since they misstated the law (*Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391) and could be construed contrary to IPI Civil 3d No. 30.21. In *Balestri*, our supreme court disapproved as contrary to law a jury instruction that "failed to instruct the jury that the damages assessed should not be reduced because the disability was due in part to a preexisting condition or for the reason that plaintiff, because of a preexisting condition, was more susceptible to injury than an individ-

ual would have been without the preexisting condition." (*Balestri*, 76 Ill. 2d at 456, 394 N.E.2d at 393.) The instructions tendered by defendant would have the effect of confusing the previously clear directive in IPI No. 30.21 and accurate charge to the jury when reading the instructions as a whole. (See *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391.) We find no error by the trial court in giving IPI Civil 3d No. 30.21 and refusing defendant's tendered instructions.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

LEWIS, P.J., and RARICK,[1] J., concur.

---

[1] Justice Chapman was originally assigned to this case; Justice Rarick was later substituted on the panel.