JOHN D. LUTHER, Plaintiff-Appellee, v. NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District   No. 5—93—0530

Opinion filed May 11, 1995.

18

LEWIS, J., dissenting.

Karl D. Dexheimer and William J. Niehoff, both of Thompson & Mitchell, of Belleville, for appellant.

Lance Callis, of Callis, Papa, Hale, Jensen, Jackstadt, Bailey & Halloran, of Granite City, and Jeanne Sathre, of Edwardsville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Norfolk and Western Railway Company, appeals from a judgment in favor of plaintiff, John Luther, in an action brought by plaintiff under the Federal Employers' Liability Act (FELA) (45 U.S.C. § 51 *et seq.* (1988)), for back injuries allegedly sustained while working as a track laborer. The circuit court of Madison County entered judgment on a jury verdict awarding plaintiff $1,572,500. Defendant contends that (1) the trial court erred in directing a verdict against defendant on the issue of plaintiff's contributory negligence; (2) the trial court erred in admitting evidence of inapplicable and irrelevant Occupational Safety and Health Act (OSHA) (29 U.S.C. § 651 *et seq.* (1988)) regulations; (3) the trial court erred in permitting plaintiff to present evidence of defendant's surveillance tapes of plaintiff; (4) the trial court improperly permitted plaintiff's expert to give previously undisclosed opinions; (5) the trial court erred in permitting plaintiff to file numerous amendments during trial; and (6) the verdict was excessive and a product of passion and prejudice. We affirm.

I

This action arose from an injury plaintiff sustained in the course of his employment for defendant as a track laborer in an extra gang that replaced defective rail. Plaintiff held this position from 1979 until 1988. On August 19, 1988, plaintiff was assigned to work at the Jennings, Missouri, jobsite. Plaintiff, William Burg, foreman, and Mike James, assistant foreman, comprised the extra gang. Usually, anywhere from three to five additional laborers are part of the gang. On this particular day, plaintiff was the only laborer. The men were assigned to replace defective track on the main line at Jennings, Missouri. The gang was shorthanded and working under track time, meaning the gang had a certain amount of time to complete work on the track so as to not interfere with the train schedule. Plaintiff testi-

fied that shortly after arriving at work, plaintiff, Burg, and James took the company truck to Luther Yard to pick up the material they needed for work that morning. The materials plaintiff picked up included bolts, spikes, and 20 pairs of angle bars. Plaintiff stacked the materials alongside the tool boxes in the truck bed. After picking up the material, the gang headed for the mainline tracks to begin replacing the defective rails. To remove defective rail, the rail is cut into a 10-foot-long section. Then, the defective rail is cut into three pieces, which are placed in the truck bed. Each piece of rail weighs about 110 to 132 pounds. Plaintiff testified that at the time of the occurrence, there were about 8 to 10 pieces of defective rail in the back of the truck, along with other tools and materials the gang used that morning.

As the gang was about to move on to the next jobsite, Burg told plaintiff to put away the rail saw which had been used to cut out the defective rail. The rail saw weighs about 40 pounds. Plaintiff climbed onto the back of the truck bed, and James handed him the saw. Plaintiff grabbed the saw and turned around in the spot where he was standing and looked for a safe place to lay the saw down. Plaintiff observed a clear space near the box where the rail saw is normally stored. The storage box is located in the front of the truck bed near the cab. Plaintiff testified he could not go directly to the saw box due to the pieces of rail and other materials in the truck bed. Further, plaintiff testified that he could not place the rail saw on top of the pieces of old rail, angle bars, and debris because the blades of the rail saw could easily chip, thereby creating a safety hazard—a damaged blade could cause the saw to "explode" while in use. Moreover, to place the rail saw on top of the debris is a violation of company safety rules. Plaintiff navigated his way to the clearing, bent his knees, and reached out to place the saw in the vacant space. As he reached out, plaintiff fell to his knees, dropping the saw. Simultaneously, plaintiff felt a sharp pain in the middle of his back. Burg hopped onto the truck to assist plaintiff. Burg testified that plaintiff appeared to be in a lot of pain. Plaintiff asked to be taken to a hospital as the pain grew worse. Another worker took plaintiff to St. Elizabeth's Hospital in Granite City, where he was hospitalized for about a week. Plaintiff further testified that prior to the accident, he never experienced any back pain. Plaintiff stated that since the accident he experiences constant back pain with associated problems in his extremities.

Burg and James testified that laborers are responsible for keeping the truck bed clean. Burg stated that the foreman determines when, during the day, laborers are to clean up the truck. Burg further testified that, on the day of the occurrence, the gang had only

one laborer, plaintiff, and they were working under a time constraint. Burg stated: "[Because of these conditions,] I had no intentions of having anyone clean the back of the truck because we used it as a working platform for the materials we used throughout the day." Additionally, Burg testified that defendant did not have a safety policy requiring work crews to keep the truck beds clean while working.

Plaintiff's physician, Dr. Ravi Shitut, an orthopedic surgeon, testified that plaintiff suffers from degenerative disk disease, which is caused by the normal aging process. According to Dr. Shitut, this condition was aggravated by plaintiff's accident. Dr. Shitut explained that plaintiff's condition is inoperable because it involves three disks. Surgical treatment for degenerative disk disease is, in Dr. Shitut's opinion, limited to two disks at the most. Dr. Shitut stated that plaintiff's symptoms of back pain and degenerative disk disease are permanent and that the only treatment available for plaintiff is exercise, using heat on the affected area, and taking anti-inflammation and nonsteroidal analgesic-type medications. Regarding plaintiff's ability to return to his laborer's job, Dr. Shitut testified that as a result of plaintiff's injuries, he is unable to resume his work as a railroad laborer.

Defendant's company physician also examined plaintiff and determined that plaintiff, due to lower back pain, did not conform to the standard required for the position of laborer. Testifying as a medical expert for defendant, Dr. John Atkinson, a rheumatologist and arthritis specialist, also examined plaintiff. Upon his review of plaintiff's medical record and a physical examination of plaintiff, Dr. Atkinson determined that plaintiff did not have secondary degenerative arthritis but did suffer from degenerative disk disease. Further, Dr. Atkinson testified that he could not find a medical explanation for plaintiff's continuing discomfort and recommended that plaintiff undergo a work-hardening program to increase his muscle tone and strength.

Plaintiff's economic expert, Dr. Leroy Grossman, testified that in the four years between plaintiff's injury and the time of the trial, plaintiff suffered a loss of $77,704 in lost wages. Dr. Grossman opined that plaintiff, age 38 at the time of the trial, would suffer future lost earnings of $536,785 if he retired at age 63 and that this figure would rise to $589,618 if plaintiff retired at age 66.

Jack Strader, plaintiff's rehabilitation counselor and vocational expert, testified that plaintiff was learning disabled and suffered from depression and continuing pain due to his back injury. As a result of these factors, plaintiff was not presently employable. Strader opined that should plaintiff overcome these difficulties, he could prob-

ably secure employment in an unskilled, minimum wage job such as custodial/maintenance-type work.

Defendant offered expert testimony from an occupational therapist and a rehabilitation counselor. Douglas Cole, an occupational therapist, was called to testify regarding plaintiff's ability to perform work. After reviewing plaintiff's records, Cole opined that plaintiff could perform work at the sedentary, light- or medium-level categories with restrictions, such as no highly repetitive squatting, kneeling, or bending activities. James England, a rehabilitation counselor, also reviewed plaintiff's records and recommended that plaintiff receive tutoring or on-the-job training in order to enter into a new career. Based on plaintiff's record, England opined that the types of work plaintiff can do, with additional training, include drafting, dental lab technician, cabinet-making, locksmith, small engine repair, and taxidermy.

At the close of all the evidence, plaintiff filed a motion for directed verdict on the issue of contributory negligence, which the trial court granted. The trial court denied defendant's motion for directed verdict on the issue of the affirmative defenses of contributory negligence and failure to mitigate damages.

The jury returned a verdict in favor of plaintiff and awarded $1,572,500 in damages. The trial court denied defendant's post-trial motion for judgment notwithstanding the verdict and for a new trial. Defendant now appeals.

## II

Defendant first argues that the trial court erred in directing a verdict for plaintiff on the issue of contributory negligence. Defendant contends that, at trial, sufficient evidence was adduced of plaintiff's knowledge of the allegedly dangerous condition and of plaintiff's fault in creating the unsafe condition by failing to clean the truck bed. Defendant argues that because there was evidence of plaintiff's contributory negligence, the trial court should not have directed a verdict for plaintiff but, rather, it should have submitted the issue of plaintiff's contributory negligence to the jury. We disagree.

It is well established that in a FELA case, the defendant is entitled to a contributory negligence instruction if there is any evidence to support the theory. (*Pruett v. Norfolk & Western Ry. Co.* (1994), 261 Ill. App. 3d 29, 33, 632 N.E.2d 652, 655; *Uhrhan v. Union Pacific R.R. Co.* (1993), 155 Ill. 2d 537, 547, 617 N.E.2d 1182, 1187.) Nonetheless, the burden of proving plaintiff's contributory negligence is on the defendant. (*Uhrhan*, 155 Ill. 2d at 547, 617 N.E.2d at 1187.)

Our supreme court defined contributory negligence as " 'a careless act or omission on the plaintiff's part tending to add *new* dangers to conditions that the employer negligently created or permitted to exist.' " (Emphasis added.) (*Uhrhan*, 155 Ill. 2d at 548, 617 N.E.2d at 1187, quoting *Taylor v. Burlington Northern R.R. Co.* (9th Cir. 1986), 787 F.2d 1309, 1316.) Directed verdicts should be granted only when all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Defendant maintains that plaintiff acted negligently and that the jury could have disbelieved plaintiff's testimony and inferred that, based merely on the fact that the accident occurred, plaintiff failed to exercise due care. To support its contention, defendant relies on *Uhrhan v. Union Pacific R.R. Co.* (1993), 155 Ill. 2d 537, 617 N.E.2d 1182.

In *Uhrhan*, the plaintiff, working at night as a switchman, was injured when he tripped over a piece of wire while walking alongside the tracks. There was no light in the area where the plaintiff was working. However, the plaintiff had a lantern with him. The lanterns were used to signal other switchmen and to illuminate the area while walking through the yard. Plaintiff was aware of the possibility of debris alongside the track. Also, the railroad had a safety rule requiring workers to be on the lookout for tripping hazards. At trial, the jury found in favor of the plaintiff and awarded him $17,000. The jury further determined that the plaintiff had been 40% contributorily negligent and reduced his recovery accordingly. Judgment was entered in favor of the plaintiff in the amount of $10,200. The appellate court reversed the jury's finding of contributory negligence, finding no evidence warranting the submission of contributory negligence instructions to the jury. Our supreme court reversed the appellate court, holding that a defendant in a FELA case is entitled to have a jury instructed on contributory negligence if there is any evidence to support the theory. Further, the supreme court found that evidence of a safety rule violation raises a question of fact as to contributory negligence. Thus, the supreme court concluded that a jury could have reasonably determined that the plaintiff's actions added additional dangers to the situation.

Defendant's reliance on *Uhrhan* is misplaced. According to *Uhrhan*, we review the record to determine if there is any evidence that plaintiff's omissions or actions added additional dangers to the situation. If plaintiff's actions or omissions increased the danger to himself, defendant is entitled to raise the issue of contributory

negligence. However, defendant is not entitled to reach the jury on the issue of contributory negligence, for which defendant bears the burden of proof, on nothing more than defendant's disbelief of plaintiff's testimony. (*Dixon v. Penn Central Co.* (6th Cir. 1973), 481 F.2d 833, 837.) "Other evidence of the matter to be proved must be adduced." *Dixon*, 481 F.2d at 837.

█ Here, there is no evidence that plaintiff violated any company safety rules. Burg testified that at the time of plaintiff's injury there were no safety rules requiring laborers to clean up the truck bed after the completion of work at each jobsite. Further, the gang was operating with only one laborer and under a time constraint to get the work done quickly so as to avoid disrupting rail traffic. Additionally, while defendant used other vehicles to deliver new rail to each site, there were no corresponding arrangements for removal of defective rail and debris other than piling it onto the truck bed thereby creating the hazardous condition under which plaintiff worked. Moreover, plaintiff, exercising due care, checked for hazards and decided to lay the saw in a nearby vacant space because he could not safely reach the rail saw storage box or safely put the saw on top of old rails. Thus, his conduct did not depart from that of a reasonably prudent employee in this situation. (*Tiller v. Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 68, 87 L. Ed. 610, 618, 63 S. Ct. 444, 451-52.) We find no evidence of contributory negligence and conclude that the trial court properly directed verdict for plaintiff.

### III

Defendant next argues that a general verdict does not preclude this court from setting aside the jury's verdict because the trial court improperly admitted irrelevant and highly prejudicial evidence of defendant's alleged violation of OSHA regulations which were inapplicable to the facts of this case. We are unpersuaded by defendant's contention.

Under section 2—1201(d) of the Civil Practice Law (735 ILCS 5/2—1201(d) (West 1992)), a general verdict can be sustained on any of several bases of liability and will not be reversed due to the impairment of one of the theories. (*Witherell v. Weimer* (1987), 118 Ill. 2d 321, 329, 515 N.E.2d 68, 72; *Moore v. Jewel Tea Co.* (1970), 46 Ill. 2d 288, 263 N.E.2d 103.) Section 2—1201(d) provides:

"§ 2—1201. Return of verdict—Separate counts—Defective or unproved counts.

* * *

(d) If several grounds of recovery are pleaded in support of the same claim, whether in the same or different counts, an entire

verdict rendered for that claim shall not be set aside or reversed for the reason that any ground is defective, if one or more of the grounds is sufficient to sustain the verdict; nor shall the verdict be set aside or reversed for the reason that the evidence in support of any ground is insufficient to sustain a recovery thereon, unless before the case was submitted to the jury a motion was made to withdraw that ground from the jury on account of insufficient evidence and it appears that the denial of the motion was prejudicial." 735 ILCS 5/2—1201(d) (West 1992).

■ Here, defendant claims that the allegations of OSHA violations were inapplicable to the facts of the case. Defendant has made no attempt to establish that the evidence was insufficient to sustain the verdict as to defendant's liability. After carefully examining the record, we conclude that there is ample evidence to support the jury's verdict. Even assuming, *arguendo*, that the evidence of alleged OSHA violations was improperly allowed, the other evidence was sufficient to sustain the other theories of negligence submitted to the jury. Furthermore, before the submission of the case to the jury, defendant could have made a motion "to withdraw that ground from the jury on account of insufficient evidence." (735 ILCS 5/2—1201(d) (West 1992).) However, having failed to do so, defendant cannot now seek reversal of the verdict predicated upon the infirmity of one of the theories of liability. Accordingly, we find no basis for reversal on this ground.

## IV

Defendant argues that the trial court erred in permitting plaintiff to present evidence of defendant's surveillance tapes because the evidence was totally irrelevant and highly prejudicial, thereby creating a punitive atmosphere which deprived defendant of a fair trial.

It is well established that video and photographic exhibits are admissible if the probative value of the exhibits is not outweighed by the danger of unfair prejudice. (*Drews v. Gobel Freight Lines, Inc.* (1991), 144 Ill. 2d 84, 99, 578 N.E.2d 970, 977; *Cisarik v. Palos Community Hospital* (1991), 144 Ill. 2d 339, 579 N.E.2d 873.) The admission of video and photographic exhibits into evidence is within the sound discretion of the trial court. *Carney v. Smith* (1992), 240 Ill. App. 3d 650, 656, 608 N.E.2d 379, 383.

During the trial plaintiff introduced videotapes of surveillance of plaintiff conducted by defendant. The videotapes depicted plaintiff going about his daily activities. The tapes represent about 50 hours of surveillance activity and were intended to document physical activities inconsistent with plaintiff's asserted physical limitations resulting from his injury. However, the videotapes do not show plaintiff

performing activities inconsistent with his claimed physical limitations.

■ Because plaintiff's abilities are a matter in controversy, the surveillance tapes were relevant and had probative value concerning the issue of the extent of plaintiff's injury. (*Carney*, 240 Ill. App. 3d at 657, 608 N.E.2d at 383.) Defendant urges this court to find that the prejudicial effect of the videotapes substantially outweighs their probative value because the videotapes tend to corroborate both plaintiff's testimony and the medical testimony regarding plaintiff's limited physical capacity. However, we see no prejudice that defendant allegedly suffered by admission of the videotapes. Therefore, we find that the trial court did not err in admitting the videotapes into evidence.

## V

Defendant also raises objections to the testimony of plaintiff's expert economist, Dr. Leroy Grossman. Defendant maintains that Dr. Grossman's testimony violated Supreme Court Rule 220 (134 Ill. 2d R. 220) because the opinions expressed were beyond the scope of his original report and deposition testimony regarding plaintiff's lost wages. (*Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, 930, 520 N.E.2d 852, 856.) The figures presented in Dr. Grossman's testimony at trial and in the supplemental report were based on the earnings of plaintiff's co-worker, a machine operator. Although plaintiff is a track laborer, he also has machine operator rights, which are lower on defendant's seniority roster. Because plaintiff's future wages are based on a seniority system and since the co-worker's classification was comparable to plaintiff's, the co-worker's earnings were used by Dr. Grossman to recalculate plaintiff's future lost wages. Defendant contends that the recalculations essentially amended the original report because the amount of future lost wages was significantly greater. Defendant further contends that because plaintiff failed to make the supplemental report available to defendant until the eve of the trial, defendant was unable to adequately investigate the underlying basis of the new opinions. Consequently, defendant argues that it was prejudiced by this nondisclosure.

Supreme Court Rule 220(c)(3), which relates to the discovery of an expert's opinion, states:

"Rule 220. Expert Witnesses

* * *

(c) Discovery.

* * *

(3) A party shall be required to seasonably supplement his answers to interrogatories propounded under this rule as additional information becomes known to the party or his counsel." 134 Ill. 2d R. 220(c)(3).

The committee comments for paragraph (c) further illuminate a party's obligation to disclose any modifications in opinions which may be expressed at trial, stating:

"In order to prevent an undisclosed shift in theory or belief the rule requires that a party seasonably submit a modified report or supplemental answers taking into account shifts· in the expert's views." 134 Ill. 2d R. 220(c)(3), Committee Comments at 181.

■ Upon review of the record, we conclude that Dr. Grossman's revisions did not constitute a "shift in theory or belief." Dr. Grossman's supplemental report was merely an update of the original and used the same methodology to determine the present value of plaintiff's future lost wages. With respect to the timeliness of plaintiff's disclosure of the supplemental figures, defendant failed to produce the requested wage roster and seniority list until shortly before the start of the trial. Defendant can hardly complain about the timeliness of plaintiff's disclosure given its delay in producing the requested documents. Additionally, the trial court permitted defendant to interview Dr. Grossman regarding the supplemental figures before he testified at trial. There was no violation of Supreme Court Rule 220.

## VI

The next issue defendant asks us to address is whether the trial court erred by allowing plaintiff to amend his complaint on four separate occasions between the day before the trial and the jury instruction conference. According to defendant, each amended complaint filed by plaintiff presented a new theory of liability, thereby forcing defendant to constantly respond to new legal theories and preventing it from obtaining full disclosure of plaintiff's claim until the end of the trial. Defendant asserts that these amendments unfairly prejudiced its case and deprived defendant of a fair trial.

The decision to allow an amendment to a complaint lies within the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. (*Grimming v. Alton & Southern Ry. Co.* (1990), 204 Ill. App. 3d 961, 987, 562 N.E.2d 1086, 1102.) Specifically, given the liberal policy of permitting amendments to pleadings, courts may allow, after the close of the evidence, amendments to conform pleadings to the proof, "but their materiality to the evidence already introduced must be apparent." (*Lawson v. Hill*

(1979), 77 Ill. App. 3d 835, 845, 396 N.E.2d 617, 625.) The *Lawson* court went on to explain:

> "[W]hile recognizing that an amendment should not ordinarily be permitted to set up matters of which the pleader had full knowledge at the time of interposing the original pleading and no excuse is presented for not putting its substance in the original pleading, such an amendment will be allowed where justice is not served by denying leave to amend; doubts should be resolved in favor of allowing amendments." *Lawson*, 77 Ill. App. 3d at 845, 396 N.E.2d at 625.

■ In the instant case, plaintiff's original complaint alleged as negligence defendant's failure to provide plaintiff with a reasonably safe place to work. Plaintiff's initial amendments neither raised new issues nor changed the underlying facts. These amendments merely added additional allegations of negligence arising out of violations of OSHA regulations. 29 U.S.C. § 651 *et seq.* (1988).

The trial court permitted plaintiff to file his second amended complaint on the day jury selection began. The court granted defendant a 13-day continuance to permit defendant to address plaintiff's additional allegations of OSHA violations. At that time, the court stated that it would give defendant, upon written motion, more time if needed. Further, the court advised defendant that it would also consider postponing opening statements should that be necessary to ensure defendant adequate time to review the amended allegations and related law. At no time thereafter did defendant request any additional time to respond to amended allegations.

With respect to plaintiff's fourth amended complaint, the only new issue raised was whether the Locomotive Inspection Act (45 U.S.C. § 23 (1988)) was applicable to the particular truck involved here. The trial court granted defendant's motion to dismiss plaintiff's fourth amended complaint.

■ Despite defendant's contention to the contrary, the trial court's allowance of these amendments did not prejudice defendant or deprive him of a fair trial. Therefore, we find no error or abuse of discretion in the trial court's ruling allowing the amendments to the complaint.

## VII

Finally, defendant argues that the verdict is excessive because it is based on passion and prejudice. Defendant contends that the $1,500,000 award bears no relationship to the nature and extent of plaintiff's injury and the substantial evidence of plaintiff's contributory fault. We find no merit in this contention.

Despite defendant's strenuous arguments to the contrary, our review of the record finds nothing presented to the jury at trial or in opening statements to inflame the passions and prejudices of the jury. Most importantly, the record clearly supports the jury's verdict. The ascertainment and assessment of damages are primarily questions of fact and are peculiarly within the province of the jury to determine. (*Bridgeman v. Terminal R.R. Association* (1990), 195 Ill. App. 3d 966, 975, 552 N.E.2d 1146, 1151.) This court will not substitute its judgment for that of the jury as to the amount awarded in any given case. (*Bridgeman*, 195 Ill. App. 3d at 975, 552 N.E.2d at 1151.) Here, the amount of the award is not excessive, nor does it shock the judicial conscience. There is no basis in this record to say the size of the verdict is the result of prejudice or passion on the part of the jury.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

WELCH, J., concurs.

JUSTICE LEWIS, dissenting:
"What's in a name? that which we call a rose By any other name would smell as sweet." Shakespeare: *Romeo and Juliet*, act II, sc. ii, 43.

I dislike disagreeing with my colleagues, but I just cannot see how plaintiff's negligence is different from plaintiff's contributory negligence. The point is, plaintiff had the burden of proving that defendant was negligent, and plaintiff did so by proving defendant's employee was negligent. Who was defendant's employee that was so negligent? Why it was none other than plaintiff. If plaintiff's negligence was so great as to be imputed to defendant, how can we say that plaintiff was not contributorily negligent? There must be two different meanings for the word "negligence," depending on whose ox is being gored.

The evidence for purposes of a motion for a directed verdict by plaintiff on the issue of contributory negligence must be construed most favorably for defendant. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Thus, the evidence showed that plaintiff was responsible for keeping the back or bed of the truck clean and orderly. He did not do so. Plaintiff could and should have taken some time to straighten the truck up, but he did not. Plaintiff could and should have taken the time to clear a path to where he

wished to place the saw, but he did not. Plaintiff could have laid the saw down on a tool box (this matter was vigorously disputed), stepped over materials in the truck, and positioned himself better to move the saw to the floor of the truck, but he did not. Plaintiff, after receiving the saw from the assistant foreman, only then looked for a place to set the saw, instead of deciding, before he accepted the saw, where he was going to place the saw. Plaintiff reached out to place the saw in a small clear spot instead of positioning himself so that he could bend his knees and set the saw straight down. Clearly, the jury could find that the party who caused the accident was the plaintiff. In fact, if you exclude plaintiff's acts as the cause of the accident, there is not anyone else or any other agency that we can point the finger at as the cause of plaintiff's injury.

The facts in this case are more one-sided than the facts in *Uhrhan v. Union Pacific R.R. Co.* (1993), 155 Ill. 2d 537, 617 N.E.2d 1182, because in *Uhrhan* someone other than plaintiff left the wire along the tracks, plaintiff was busy doing his job by signaling and keeping his eye on the other switchmen, and at one time the railroad had recognized the danger and hired people to walk along the tracks to clean up the debris. In spite of all this, the supreme court said that the jury should have been allowed to decide if plaintiff should have been aware of the possibility of debris alongside the track and kept a lookout. In the case at bar, the evidence could easily be construed that there was not any other person or outside agency that caused the accident other than the plaintiff himself.

The trial judge predicated his ruling in the case at bar on the appellate court decision in *Uhrhan*, which the supreme court then reversed. (*Uhrhan*, 155 Ill. 2d 537, 617 N.E.2d 1182.) Plaintiff, in this appeal, shifted his reliance to this court's opinion in *O'Ryan v. CSX Transportation, Inc.* (1993), 255 Ill. App. 3d 214, 626 N.E.2d 374. No attention was paid to the ranting and raving contained in the dissent. The supreme court, however, did not reverse this court's decision in *O'Ryan*. It *vacated* the opinion of this court without comment pursuant to its supervisory authority. (*O'Ryan v. CSX Transportation, Inc.* (1994), 155 Ill. 2d 565, 630 N.E.2d 443.) I do not claim to be a genius, but I believe that the supreme court was sending this court a message. Simply put, courts should quit devising ways that remove the issue of contributory negligence from consideration by a jury. (It would be interesting to see what a jury would do in this case with the contributory negligence issue. Would the jury find the railroad negligent based on plaintiff's acts or omissions and then find plaintiff only 25% contributorily negligent, or would the jury find plaintiff 100% contributorily negligent?)

There does not seem to be a dispute that the trial court erred in allowing evidence and giving instructions late in the trial as to a new theory concerning irrelevant OSHA violations. Surely we should reverse on those grounds alone.

The admission into evidence, by plaintiff, of defendant's surveillance videotapes of plaintiff raises an interesting issue that, most likely, will increasingly confront the courts. Plaintiff obviously wished to prejudice the jury against defendant's "spying," and apparently plaintiff was successful when one looks at the jury's verdict that awarded plaintiff, injured when he was 34, more than twice the expected lifetime earnings for a better job than he held, for a disease that many people possess and overcome, for an injury that plaintiff would eventually suffer from regardless of all precautions taken, and for an injury that did not require surgery and did not prevent him from being retrained for and procuring a less strenuous job. Should the courts or the legislature encourage surveillance to weed out malingering plaintiffs, or should the courts discourage surveillance by allowing plaintiffs to use the videotapes merely to show that defendants "spied" on plaintiffs?

At least three courts have ruled against plaintiffs on the issue of using defendants' surveillance against defendants. (See *Hall v. In-Photo Surveillance Co.* (1995), 271 Ill. 3d 852; *DiMichel v. South Buffalo Ry. Co.* (1992), 80 N.Y.2d 184, 604 N.E.2d 63, 590 N.Y.S.2d 1; *Scaggs v. Consolidated R. Corp.* (7th Cir. 1993), 6 F.3d 1290.) Whether courts should or should not encourage surveillance by defendants is a public policy question that should only be decided by the legislature or the supreme court. Appellate and trial courts should confine themselves to only answering the issue of whether the evidence was relevant.

The problem in this case is that plaintiff did not introduce the videotapes for the purpose of showing a day in his life; rather, the primary purpose of plaintiff was to poison the jury against defendant for "spying" on plaintiff. If the videotape had shown plaintiff to be suffering from his injuries, I would have no problem with its admission by plaintiff. Likewise, if the film had shown plaintiff playing golf or leaping into his convertible, I would have no problem with an offer by defendant. Both offers by the parties would be relevant to prove or disprove plaintiff's injuries. In the case at bar, it was doubtful, however, that the videotapes exhibited either plaintiff's injuries or the lack thereof. Moreover, whether or not defendant "spied" did not prove or disprove plaintiff's injury or the extent thereof. The issue of "spying," even if the videotapes were relevant, should have been kept out of the trial until we have some direction by the legislature or the supreme court as to public policy.

Finally, I do not believe that it is fair for either plaintiff or defendant to change the theories contained in the pleadings, either on the day of or during the trial. (If defendant had been allowed to add an affirmative defense during the trial citing mandatory compliance with a statute as authority, we would have reversed in a summary order.) This is especially true when the party raises Federal statutes. This court has witnessed an increasing number of cases where counsel at the last minute raises a Federal statute and a new theory and talks the trial judge into giving incomplete instructions as to that statute to the jury, and we later discover that the statute does not even apply. In this case there were OSHA regulations (29 U.S.C. § 651 *et seq.* (1988)) and the Locomotive Inspection Act (45 U.S.C. § 23 (1988)), both of which did not apply. We should not be rewarding the offending party, because all we are doing is encouraging both plaintiffs and defendants to wait until the last minute to spring a surprise on their opponents. The courts should demand and require that the parties define the issues before trial; otherwise, let us stop deluding ourselves that the courts wish to remove surprise as an element from the trial.

Accordingly, I would reverse, as there was very little about this trial that was fair.